## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **CHRISTOPHER FLACCO and WINTON SINGLETARY,** | : |
| **Plaintiffs,** | : |
| **v.** | :     Case No. _____ |
|  | : |
| **DANIELLE OUTLAW, CHARLES RAMSEY, RICHARD ROSS, JR., KEVIN BETHEL, MICHAEL ZACCAGNI, PEDRO RODRIGUEZ, AND ALBERT D'ATTILIO, in their individual capacities,** | :     **JURY TRIAL DEMANDED** |
| **Defendants.** | : |

### CLASS ACTION COMPLAINT

Christopher Flacco and Winton Singletary ("Plaintiffs"), by and through their undersigned counsel, hereby make the following allegations against Danielle Outlaw, Charles Ramsey, Richard Ross, Jr., Kevin Bethel, Michael Zaccagni, Pedro Rodriguez, and Albert D'Attilio ("Defendants") in their individual capacities, based upon actual knowledge, information, belief, and the investigation of counsel:

### NATURE OF THE ACTION

1.     Plaintiffs contend that Defendants, acting as their joint employers and in their individual capacities, violated the Pennsylvania Wage Payment and Collection Law, 43 Pa. C. S. §§ 260.1, *et seq*. ("WPCL") and negligently violated their duty to implement and effectuate Civil Service Regulation ("CSR") 31.06 for the benefit of Philadelphia Police Department Captains, Staff Inspectors, Inspectors, and Chief Inspectors ("PPD ranking officers"). Defendants' conduct deprived Plaintiffs and the Class members of thousands of hours of required overtime compensation for authorized emergency work they performed during the relevant period.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1), because the matter in controversy exceeds the sum or value of $75,000.00 and is between citizens of different states, and pursuant to 28 U.S.C. §1332(d), because at least one Plaintiff is a citizen of a state different from any Defendant, the total amount claimed by all Plaintiffs exceeds $5,000,000.00, and there are at least 100 putative Class members, the vast majority of whom reside in Pennsylvania.

3.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2), because: actions and omissions giving rise to Plaintiffs' claims occurred in this District; Plaintiffs reside in this District, suffered the losses at issue in this District, and worked for Defendants in this District; Defendants worked in this District, and engaged in the wrongful conduct at issue in this District.

## PARTIES

4.      Plaintiff Christopher Flacco is an adult citizen of the Commonwealth of Pennsylvania, who resides in Philadelphia County.  At all relevant times, Plaintiff Flacco has been employed as a PPD Chief Police Inspector.

5.      Plaintiff Winton Singletary is an adult citizen of the Commonwealth of Pennsylvania who resides in Philadelphia County (PA).  At all relevant times, Plaintiff Singletary has been employed as a PPD Captain, Inspector, and Chief Police Inspector-Patrol.

6.      Defendant Kevin Bethel is an adult citizen of the Commonwealth of Pennsylvania who resides in Montgomery County (PA).  Defendant Bethel has served as PPD Commissioner since approximately November 2023.

7.    Defendant Danielle Outlaw is an adult citizen of the State of New Jersey who resides in Montclair County (NJ).  Defendant Outlaw served as PPD Commissioner from approximately December 2019 to September 2023.

8.    Defendant Richard Ross, Jr. is an adult citizen of the Commonwealth of Pennsylvania who resides in Philadelphia County (PA).  Defendant Ross served as PPD Commissioner from approximately January 2016 to August 2019.

9.    Defendant Charles Ramsey is an adult citizen of the Commonwealth of Pennsylvania who resides in Philadelphia County (PA).  Defendant Ramsey served as PPD Commissioner from approximately January 2008 to January 2016.

10.   Defendant Michael Zaccagni is an adult citizen of the Commonwealth of Pennsylvania who resides in Philadelphia County (PA).  Defendant Zaccagni has served as Philadelphia Office of Human Resources ("OHR") Director since approximately June 2019.

11.   Defendant Pedro Rodriguez is an adult citizen of the Commonwealth of Pennsylvania who resides in Philadelphia County (PA).  Defendant Rodriguez served as OHR Director from approximately May 2016 to early 2019.

12.   Defendant Albert D'Attilio is an adult citizen of the Commonwealth of Pennsylvania who resides in Philadelphia County (PA).  Defendant D'Attilio served as OHR Director from before September 2013 to approximately March 2016.

## EMPLOYMENT STATUS ALLEGATIONS

13.   During the relevant period, Defendants have been jointly responsible for administering, applying, enforcing, and interpreting all hours of work, human resources, overtime, payroll, and wage and hour policies and systems applied to, and used by, PPD ranking officers,

and for ensuring Civil Service System Regulations were properly implemented and effectuated with respect to PPD ranking officers.

14.     During the relevant period, Defendants' relationship with PPD ranking officers has borne the hallmarks of an employer-employee relationship, because Defendants exercised significant control over the terms and conditions of their employment, including:

> a.     Managing and overseeing the employment application process for PPD ranking officers;
>
> b.     Determining if PPD ranking officers would be hired;
>
> c.     Managing and overseeing the job-related training provided to PPD ranking officers;
>
> d.     Setting and approving work schedules for PPD ranking officers;
>
> e.     Assigning the work done by PPD ranking officers and indicating how that work would be performed;
>
> f.     Tracking the hours PPD ranking officers worked, approving these hours to be paid, submitting these hours to payroll, and ensuring these hours were properly paid;
>
> g.     Directing and controlling all aspects of PPD ranking officers' work;
>
> h.     Reviewing and evaluating PPD ranking officers' job performance;
>
> i.     Determining the policies and procedures relating to PPD ranking officers' employment and how these policies were applied and enforced;
>
> j.     Determining the scope and nature of any discipline imposed on PPD ranking officers;
>
> k.     Determining whether PPD ranking officers would be promoted, transferred, suspended, or terminated; and

l.    Tracking the creation of CSR relevant to PPD ranking officers, and ensuring all such Regulations were properly applied and effectuated.

## BACKGROUND FACTS

15.    Historically, PPD ranking officers were only eligible to receive extra pay for working over 40 hours per week on a few specific days each year, like during the Mummers' parade, the Puerto Rican Day parade, and the Independence Day celebration.

16.    Against this backdrop, the CSC enacted CSR 6.115-7, which provided certain non-police classes of City employees with an entitlement to overtime wages.  *See* CSR 6.115-7.

17.    Thereafter, the CSC enacted Interim Regulations that expanded both the classes of employees eligible for overtime wages and the types of work that qualified for overtime wages. *See* CSR 31.03-31.27.

18.    Finally, on September 23, 2013, the CSC enacted additional, Retroactive Regulations that further expanded the classes of employees eligible for overtime wages and the types of work that qualified for overtime wages.  *See* CSR 31.02-31.99; Nov. 20, 2013 Memo (Exhibit A).

19.    CSR 31.06 ("Emergency overtime pay for ranking officers in the police and fire departments") is one of these Retroactive Regulations.  CSR 31.06 provides that PPD ranking officers who are "authorized to work by their respective Commissioners during a period of emergency nature, in excess of the number of hours of their regularly scheduled work day or, for all hours worked on a non-scheduled work day shall, for all hours of such overtime work, be paid at their then regular rate of pay."  *See* Nov. 13, 2013 Memo, p. 3 (Exhibit A).

20.    On November 13, 2013, OHR Director Albert D'Attilio sent a Memorandum notifying "All Offices, Boards And Commissions" about the new "Amendments to the Civil

Service Regulations," including Retroactive Regulation CSR 31.06 which was made "Effective 9/23/2013." *Id.*

21.     As a result, since September 23, 2013, pursuant to the Philadelphia Home Rule Charter, CSC regulations, OHR Director D'Attilio's Memorandum, and multiple PPD policies and practices, the PPD Commissioner and OHR Director were jointly responsible for: implementing CSR 31.06 with respect to all PPD ranking officers; notifying all PPD ranking officers of their entitlement to be paid additional wages for authorized work during "periods of emergency nature;" and ensuring all PPD ranking officers' emergency work was properly authorized, tracked, and paid. *Id.   See, e.g.,* Home Rule Charter, Art. VII, Ch. 1 (Personnel Director), § 7-100 (Civil Service); Home Rule Charter, Art. VII, Ch. 4 (Civil Service Regulations), § 7-400 (Preparation and Adoption); Home Rule Charter, Art. VII, Ch. 4 (Civil Service Regulations), § 7-401 (Contents); CSR 1.01 ("It is the purpose of these Regulations to implement the Charter provisions… contained in policies and procedures covering… personnel administration").

22.     Despite having actual knowledge of all these provisions and Regulations, and being charged with effectuating and applying them, Defendants acted outside the scope of their employment and subverted the requirement that PPD ranking officers be paid for their authorized emergency work during "periods of emergency nature" by failing to: implement CSR 31.06 with respect to any PPD ranking officer; notify any PPD ranking officer of their entitlement to be paid additional wages for authorized emergency work; or ensure that PPD ranking officers' emergency work was properly authorized, tracked, or paid under CSR 31.06 at any point from September 23, 2013 to the present.

23.     During their respective periods of employment with the City, Defendants Outlaw, Bethel, Ross, Ramsey, Zaccagni, Rodriguez, and D'Attilio were all personally and ultimately

involved with, and responsible for, all wage and hour functions, policies, and systems that relate to Plaintiff's claims.

24.     Despite having actual knowledge of the wage and hour functions, policies, and systems that relate to Plaintiff's claims, and being charged with effectuating and properly applying them, Defendants acted outside the scope of their employment and subverted these functions, policies, and systems by failing to: implement CSR 31.06 with respect to any PPD ranking officer; notify any PPD ranking officer of their entitlement to be paid additional wages for authorized emergency work; or ensure that PPD ranking officers' authorized emergency work was properly tracked or paid under CSR 31.06 at any point from September 23, 2013 to the present.

25.     Defendants personally and ultimately controlled virtually every aspect of PPD ranking officers' work that relate to the claims pled in this action, including: implementing and effectuating wage and hour Regulations; informing employees of all applicable wage and hour entitlements, policies, and Regulations; scheduling and authorizing emergency work; ensuring PPD ranking officers' authorized emergency work was properly tracked and reported; reviewing PPD ranking officers' overtime hours and wages; ensuring wages were paid for all hours worked, including authorized emergency work; controlling the systems and procedures used to track PPD ranking officers' authorized emergency work and calculate their pay; and failing to follow or apply CSR 31.06 – all of which caused PPD ranking officers to be denied any wages for any of the authorized emergency work they performed at any point from September 23, 2013 to the present.

26.     As a result of Defendants' successful subversion of their duties relating to CSR 31.06 and the wage and hour functions, policies, and systems that relate to Plaintiff's claims, almost a decade passed without any PPD ranking officer learning of their entitlement to be paid for any of the authorized emergency work they performed.

27.     In approximately February 2023, PPD Captain Robert Heinzeroth, Commanding Officer of the 3rd District, and PPD Captain Steven Clark, a member of the Commanders Association Executive Board, learned about CSR 31.06 after conducting research to inform their complaints about unpaid overtime wages.  To find out if this Regulation was in effect, or had ever been applied as written, Captains Heinzeroth and Clark approached ranking officers they knew in the Philadelphia Fire Department and learned that Fire Department ranking officers had, in fact, been receiving the overtime pay provided by CSR 31.06 for years.

28.     On February 21, 2023 Chief Inspector Michael McCarrick, President of the Philadelphia Police Commander Association, asked Lieutenant Robert Casselli, a PPD representative to the City's Labor Relations Unit, if CSR 31.06 entitled PPD ranking officers to be paid for performing authorized emergency work.  Lieutenant Casselli responded by unequivocally confirming that, since its enactment, CSR 31.06 required PPD ranking officers to be paid for performing authorized emergency work.

29.     In February 2023, Chief Inspector McCarrick made a request to then-Acting Police Commissioner John Stanford that the PPD comply with CSR 31.06 and pay PPD ranking officers for their authorized emergency work.   In approximately December 2023, Chief Inspector McCarrick renewed this request to newly-appointed Police Commissioner Kevin Bethel.  Neither Acting Commissioner Stanford nor Commissioner Bethel responded to these requests, or did anything after receiving them to see that PPD ranking officers were paid under CSR 31.06 for any authorized emergency work they performed.

30.     On May 15, 2024, the PPD Commander Association wrote to the Philadelphia City Solicitor, copying Commissioner Bethel, Director Zaccagni, and others, to demand that CSR 31.06 be implemented for PPD ranking officers as it had been for Fire Department officers, and that

wages be paid for all the authorized emergency work PPD ranking officers had performed since September 23, 2013. *See* May 15, 2024 Letter (Exhibit B).

31.     To date, despite requests from many PPD ranking officers, Defendants have failed and refused to implement CSR 31.06 with respect to any PPD ranking officer, notify any PPD ranking officer of their entitlement to be paid additional wages for authorized emergency work, or ensure that PPD ranking officers' authorized emergency work is properly tracked or paid.

## PLAINTIFF-SPECIFIC ALLEGATIONS

32.     At all relevant times, Plaintiffs Flacco and Singletary have been PPD ranking officers within the meaning of CSR 31.06.

33.     From September 23, 2013 to August 26, 2020, Plaintiff Flacco served as Chief Inspector of the Office of Professional Responsibility. At the direction of his commanding officer, Plaintiff Flacco spent approximately 400 approved overtime hours responding to designated emergency events, like officer-involved shootings, that qualify for overtime pay under CSR 31.06. Defendants did not track any of these hours, or pay the wages CSR 31.06 requires for any of this work.

34.     From August 26, 2020 to present, Plaintiff Flacco has served in an operational capacity as Chief Police Inspector in the Narcotics Division. At the direction of his commanding officers, Plaintiff Flacco has spent at least an additional 350 overtime hours responding to designated emergency events like riots, election protests, looting events, and anti-Israel protests that qualify for overtime pay under CSR 31.06. Defendants have not tracked any of these hours, or paid the wages CSR 31.06 requires for any of this work.

35.     From September 23, 2013 to present, Plaintiff Singletary has served in an operational capacity as a S.W.A.T. Captain, Special Operations Inspector, and Patrol Chief

Inspector.  Across this period, at the direction of his commanding officers, Plaintiff Singletary has spent approximately 3,900 overtime hours responding to designated emergency events like officer involved shootings, active shooters, mass shootings, barricades, riots, election protests, looting events, and anti-Israel protests that qualify for overtime pay under CSR 31.06.  Defendants have not tracked any of these hours, or paid the wages CSR 31.06 requires for any of this work.

## CLASS ACTION ALLEGATIONS

36.     Plaintiffs bring their claims as a class action pursuant to Fed. R. Civ. P. 23 for a putative Class including: "All Philadelphia Police Captains, Staff Inspectors, Inspectors, or Chief Inspectors who, at any time from September 23, 2013 to the present, performed authorized overtime work during an emergency within the meaning of CSR 31.06, and were not paid all wages owed for this work."  Plaintiffs reserve the right to amend this definition as necessary

37.     Plaintiffs belong to the Class, because they worked in the identified positions during the relevant period and performed authorized overtime work during an emergency within the meaning of CSR 31.06, and were not paid all wages owed for this work.

38.     Class treatment of Plaintiffs' claims is appropriate because the putative Class satisfies the requirements of Fed. R. Civ. P. 23.

39.     The Class members are so numerous that joinder of all their individual claims would be impracticable.  At least 126 people are believed to meet the Class definition.

40.     Plaintiffs' claims are typical of the claims belonging to the Class members. Plaintiffs and the Class members are all similarly-situated employees who performed similar job duties, were subject to the same policies and procedures, and suffered the same type of harm because of Defendants' common course of wrongful conduct.

41.     There are material questions of law or fact common to the Class members because, as discussed throughout this filing, Defendants engaged in a common course of conduct that violated the Class members' legal rights.  The legality of Defendants' actions will be demonstrated by applying generally applicable legal principles to common evidence.  Any individual questions Plaintiffs' claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

> a.     Whether Plaintiff and the Class members have been subjected to materially-identical timekeeping and compensation policies;
>
> b.     Whether Defendants have maintained policies or procedures to keep accurate, contemporaneous records of the hours worked by Plaintiff and the Class members;
>
> c.     Whether the definition of "emergency nature" requires "activation" by the City's Office of Emergency Management;
>
> d.     Whether a commissioner's authorization to perform emergency work is sufficient to mandate payment of overtime hours under CSR 31.06;
>
> e.     Whether the Class members knew of the existence of CSR 31.06, or their entitlement to overtime wages for emergency work under this provision;
>
> f.     Whether the Class members failed to receive overtime wages owed to them under CSR 31.06 for emergency work they performed;
>
> g.     Whether the discovery rule, or Defendants' acts of fraudulent concealment, have tolled the statute(s) of limitations applicable to Plaintiffs' claims;
>
> h.     Whether defendants intentionally denied Plaintiffs and the Class members compensation owed pursuant to the WPCL; and
>
> i.     Whether Defendants should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

42.     Plaintiffs will fairly and adequately protect the interests of the putative Class members and have retained competent and experienced counsel for this purpose.

43.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual Class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation for at least the following reasons:

> a.      absent a class action, the putative Class members will be essentially unable to redress the conduct pled here, Defendants' violations will continue without remedy and Defendants' employees will continue to be harmed;
>
> b.      a class action will permit an orderly and expeditious administration of class claims, foster economies of time, effort, and expense;
>
> c.      this lawsuit presents no particularly unusual or difficult issues that would impede its management as a class action; and
>
> d.      Defendants have acted on grounds generally applicable to the putative Class members, making class-wide management appropriate.

44.     Allowing Plaintiffs' claims to proceed as a class action will be superior to requiring the individual adjudication of each Class member's claim, since requiring 126 or more hourly-paid employees to file and litigate individual wage claims would place an undue burden on Defendants, the Class members, and this Court.  Class action treatment will allow many similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually.  Moreover, as the damages each Class member has suffered are relatively small, the expenses and burdens associated with individual litigation would make it difficult for them to bring individual claims.  Further, the presentation of separate actions by individual Class members could

create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, substantially impairing the Class members;' ability to protect their interests.

45.     Allowing Plaintiffs' claims to proceed as a class action is also appropriate, because the Pennsylvania Wage Payment and Collection Law expressly permits private class action lawsuits to recover unpaid wages.

## TOLLING

46.     Any statute of limitations applicable to Plaintiffs' claims has been tolled by Defendants' actual knowledge and active, intentional efforts to conceal the actions, misrepresentations, and omissions alleged herein.  Through no fault or lack of diligence, Plaintiffs and the Class members had no obvious way to discover Defendants' improper conduct.

47.     Plaintiffs and the Class members did not discover any facts that would have caused a reasonable person to suspect that Defendants were acting unlawfully during the period from approximately 2013 to 2023, and could not have discovered such facts through the exercise of reasonable diligence.

48.     At all relevant times, Defendants have been under a continuous duty to disclose to Plaintiffs and the Class members their full rights and entitlements under the CSR and to effectuate these rights as to all Class members.

49.     Defendants knowingly, actively, affirmatively, or negligently concealed the facts alleged herein and Plaintiffs and the Class members, trusting Defendants to comply with their duty to properly carry out their duties, effectuate the CSR, and ensure they were paid all wages owed, reasonably relied on Defendants' concealment.

50.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendants' concealment, and Defendants are estopped from relying on any statute of limitations in defense of this action.

**COUNT I**
**Violation of the Pennsylvania Wage Payment and Collection Law**

51.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

52.     Plaintiffs and the Class members are employees covered by the WPCL. *See Paparo v. Borough of Yeadon*, 2024 WL 406753, *12 (E.D. Pa. Feb. 2, 2024).

53.     Defendants are "Employers" as defined by WPCL § 2.1.

54.     Defendants are directly and personally responsible for Plaintiffs' alleged WPCL violation, because they willfully and consistently contravened, and failed to properly administer, apply, enforce, or follow City wage and hour policies, regulations, and systems that required them to provide PPD ranking officers with additional wages for all the authorized emergency work they performed.

55.     Defendants are directly and personally responsible for Plaintiffs' alleged WPCL violation, because they willfully and consistently contravened, and failed to properly administer, Civil Service System rules and regulations that required them to provide PPD ranking officers with additional wages for the authorized emergency work they performed.

56.     Defendants are directly and personally responsible for Plaintiffs' alleged WPCL violation, because they willfully and consistently contravened, and failed to properly administer, implement, or effectuate CSR 31.06 for the benefit of PPD ranking officers and refused to track, authorize, approve, submit, or pay any overtime wages to Plaintiffs and the Class members for the authorized emergency work they performed.

14

57.     Defendants have no good faith justification or defense for failing to implement or effectuate CSR 31.06 for the benefit of PPD ranking officers, or for denying required overtime compensation to Plaintiffs and the Class members.

58.     By failing to pay Plaintiffs and the Class members wages due on regular paydays designated in advance, Defendants violated WPCL § 3.

59.     By failing to notify Plaintiffs and the Class members about their entitlement to additional wages for the authorized emergency work they performed, or about the time and place for payment of their overtime hours, Defendants violated WPCL § 4.

60.     By failing to notify Plaintiffs and the Class members that they would not receive required wages for their authorized emergency work, Defendants violated WPCL § 4.

61.     WPCL §§ 9.1 and 10 permit Plaintiffs to institute an action on behalf of a group of employees to recover any unpaid wages, liquidated damages, attorneys' fees, litigation costs, and pre-judgment interest.

## COUNT II
## Negligence

62.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

63.     At all relevant times, Plaintiffs and the Class members have: worked under Defendants; depended on Defendants to notify them about regulations applicable to their work or wages; been answerable to Defendants; been required to follow policies Defendants interpreted and applied; received work schedules and assignments from Defendants; had their work hours tracked by systems Defendants implemented and controlled; had their work hours reviewed and approved by Defendants; received wages through systems Defendants controlled; and relied upon Defendants to ensure they were properly compensated for the work they performed.

64. The Philadelphia Home Rule Charter and multiple PPD policies, practices, and CSC regulations imposed a legal duty on Defendants to prepare CSR relating to the pay plan and hours of work for Plaintiffs and the Class members, submit these CSR for approval to the CSC and Administrative Board, and file all approved CSR with the Department of Records. *See, e.g.,* Philadelphia Home Rule Charter, Art. VII, Ch. 4 (Civil Service Regulations), § 7-400 (Preparation and Adoption).

65. The Philadelphia Home Rule Charter and multiple PPD policies, practices, and CSC regulations imposed a legal duty on Defendants to provide a pay plan for Plaintiffs and the Class members that includes their hours of work and "such other matters as may be proper and necessary." *See, e.g.,* Philadelphia Home Rule Charter, Art. VII, Ch. 4 (Civil Service Regulations), § 7-401 (Contents).

66. The Philadelphia Home Rule Charter and multiple PPD policies, practices, and CSC regulations imposed a legal duty on Defendants to "administer the service program under the civil service regulations" with respect to Plaintiffs and the Class members, expressly including an affirmative duty to maintain a roster of employee positions, pay, and "any change in [] title, pay or status, and other pertinent data." *See, e.g.,* Philadelphia Home Rule Charter, Art. VII, Ch. 1 (The Personnel Director), § 7-100 (Civil Service) (emphasis added).

67. The Philadelphia Home Rule Charter and multiple PPD policies, practices, and CSC regulations imposed a legal duty on the Personnel Director to "Investigate from time to time the operation and effect of the civil service provisions of this charter and report [their] findings and recommendations to the Mayor and the Civil Service Commission," which necessarily includes an affirmative duty to ensure that any CSR applicable to Plaintiffs and the Class members is being properly effectuated. *Id.*

68.     By virtue of authorizing or directing Plaintiffs and the Class members to perform emergency overtime work, Defendants assumed a duty under the Philadelphia Home Rule Charter and multiple PPD policies, practices, and CSC regulations to ensure Plaintiffs and the Class members were properly paid for all the authorized emergency work they performed.

69.     Defendants breached their duties of care by, among other things, failing to: implement CSR 31.06 with respect to any PPD ranking officer; notify any PPD ranking officer of their entitlement to be paid additional wages for authorized emergency work; or ensure that PPD ranking officers' authorized emergency work was properly tracked, or paid under CSR 31.06 at any point from September 23, 2013 to the present.

70.     As a result of Defendants' subversion of PPD policies, practices, and CSC regulations, and their multiple breaches of duty, Plaintiffs and the Class members did not know of the existence of CSR 31.06 until approximately February 2023 and, as a result, have performed thousands of hours of authorized emergency work without pay.

71.     Plaintiff and the Class members have suffered damages as a direct and proximate result of Defendants' breach of their duties of care that include:

> a.      Lost wages for the authorized emergency work they performed;
>
> b.      Lost bonuses or raises based on the unpaid wages sought by this action;
>
> c.      Lost pension (or other) benefits based on the unpaid wages sought by this action; and
>
> d.      Other economic damages to be determined through discovery.

72.     By negligently failing to implement and effectuate CSR 31.06 for the benefit of PPD ranking officers, Defendants deprived Plaintiffs and the Class members of thousands of hours

of required overtime compensation for the authorized emergency work they performed during the relevant period, proximately causing the damages claimed herein.

WHEREFORE, Plaintiffs respectfully pray for an Order:

    a.      Certifying this matter to proceed as a class action;

    b.      Approving Plaintiffs as an adequate Class representatives;

    c.      Appointing Stephan Zouras LLC and Weir Greenblatt Pierce LLP as Class Counsel;

    d.      Finding that Defendants willfully violated the applicable provisions of the WPCL by failing to pay required overtime wages due to Plaintiffs and the Class members;

    e.      Granting judgment in favor of Plaintiff and the Class members against Defendants on all Counts;

    f.      Awarding all available compensatory damages in amounts to be determined;

    g.      Awarding all available liquidated damages in amounts to be determined;

    h.      Awarding pre-judgment interest on all compensatory damages due;

    i.      Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

    j.      Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

    k.      Awarding any further relief the Court deems just, necessary, and proper; and

    l.      Maintaining jurisdiction over this action to effectuate any settlement or resolution of Plaintiffs' claims and ensure Defendants' compliance with the foregoing mandates.

Respectfully submitted,

Dated: August 21, 2024

*/s/ David J. Cohen*
David J. Cohen
**STEPHAN ZOURAS LLC**
604 Spruce Street
Philadelphia, PA 19106
215-873-4836
dcohen@stephanzouras.com

James B. Zouras (*pro hac vice* forthcoming)
222 W. Adams Street, Suite 2020
Chicago, IL  60606
312-233-1550
jzouras@stephanzouras.com

Ronald L. Greenblatt
Patricia V. Pierce
Kasturi Sen
Noah Cohen
**WEIR GREENBLATT PIERCE LLP**
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
215-665-8181
rgreenblatt@wgpllp.com
ppierce@wgpllp.com
ksen@wgpllp.com
ncohen@wgpllp.com

*Attorneys for Plaintiffs*