**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CHRISTOPHER FLACCO and WINTON SINGLETARY,** : <br> **Plaintiffs,** : <br> **v.** : <br> : <br> **DANIELLE OUTLAW, CHARLES RAMSEY,** : <br> **RICHARD ROSS, JR., JOHN STANFORD, JR.,** : <br> **KEVIN BETHEL, MICHAEL ZACCAGNI,** : <br> **PEDRO RODRIGUEZ, and ALBERT D'ATTILIO,** : <br> **in their individual capacities,** : <br> **Defendants.** : <br> : | **Case No. 24-cv-4374-MAK** <br><br> **JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

Christopher Flacco and Winton Singletary ("Plaintiffs"), by and through their undersigned counsel, hereby make the following amended allegations against Danielle Outlaw, Charles Ramsey, Richard Ross, Jr., John Stanford, Jr., Kevin Bethel, Michael Zaccagni, Pedro Rodriguez, and Albert D'Attilio ("Defendants") in their individual capacities, based upon actual knowledge, information, belief, and the investigation of counsel:

## NATURE OF THE ACTION

1.     Plaintiffs contend that Defendants, acting as joint employers and in their individual capacities, violated Plaintiffs' right to substantive due process under the Fourteenth Amendment to the U.S. Constitution, violated the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S. §§ 260.1, *et seq.* ("WPCL"), and negligently violated their duty to implement and effectuate Civil Service Regulation ("CSR") 31.06 for the benefit of Philadelphia Police Department Captains, Staff Inspectors, Inspectors, and Chief Inspectors ("PPD ranking officers").  Defendants' conduct deprived Plaintiffs and the Class members of thousands of hours of required overtime compensation for authorized emergency work they performed during the relevant period.

## JURISDICTION AND VENUE

2.      This Court has original, federal question jurisdiction over this action pursuant to 28 U.S.C. §1331, because Plaintiffs allege Defendants have violated their constitutional right to due process and have pled a claim under a federal statute, 42 U.S.C.A. § 1983.

3.      This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332 (d)(2)(A) and 28 U.S.C. §1332(d)(5)(B) because this is a class action involving more than 100 putative Class members in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the putative Class is a citizen of a State different from any Defendant.

4.      The mandatory "home-state controversy" exception at 28 U.S.C. §1332(d)(4)(B) does not preclude federal jurisdiction over this action, because at least one-third of the putative Class members: have left their jobs since 2013 and no longer reside in Pennsylvania; have been hired since 2022 and not yet moved to Pennsylvania; or do not live in Pennsylvania for other reasons.

5.      The mandatory "home-state controversy" exception at 28 U.S.C. §1332(d)(4)(B) does not preclude federal jurisdiction over this action, because Defendant Outlaw, who resides outside Pennsylvania, is a primary defendant in this case.  Plaintiffs seek to hold Defendant Outlaw personally responsible for her own actions that lie at the heart of their claims, including her illegal and negligent efforts from February 2023 (when Plaintiffs first learned about the wage denial at issue in this action) to September 2023 that concealed the Class members' entitlement to emergency overtime pay under CSR 31.06, rebuffed efforts by Class members, the PPD Commander Association, and others to secure the relief sought by this action, and prevented them from pursuing or recovering these wages during the period she had authority to remedy this harm.

Because of the timing of her actions and her control of the entire PPD during her tenure as Commissioner, Defendant Outlaw is a real target of Plaintiffs' accusations.

6.     The mandatory "home-state controversy" exception at 28 U.S.C. §1332(d)(4)(B) does not preclude federal jurisdiction over this action because Defendant Ross, who resides outside Pennsylvania, is a primary defendant in this case.  Plaintiffs seek to hold Defendant Ross personally responsible for his own actions that lie at the heart of their claims, including his illegal and negligent efforts from January 2016 to August 2019 to conceal the Class members' entitlement to emergency overtime pay under CSR 31.06 and prevent them from pursuing or recovering these wages during the period he had authority to remedy this harm.  Because of the timing of his actions and his control of the entire PPD during his tenure as Commissioner, Defendant Ross is a real target of Plaintiffs' accusations.

7.     The discretionary "home-state controversy" exception at 28 U.S.C. §1332(d)(3) does not provide sufficient grounds to decline federal jurisdiction over this action, because: at least one-third of the putative Class members currently reside outside Pennsylvania; Defendants Outlaw and Ross, who live and work outside Pennsylvania, are primary defendants in this case; Plaintiffs' claims involve matters of interstate interest in that they apply equally to citizens of multiple states; Plaintiffs have pled their claims to invoke Federal jurisdiction, not avoid it; this forum has a distinct nexus with the Class members, all Defendants, and the alleged harm because it is the only forum that can exercise jurisdiction over all Defendants; and the number of Pennsylvania citizens who stand to benefit from this action is larger than the number of citizens from any other State.

8.     The mandatory "local controversy" exception at 28 U.S.C. §1332(d)(4)(A) does not preclude federal jurisdiction over this action, because: at least one-third of the putative Class members currently reside outside Pennsylvania; and Defendants Outlaw and Ross, individuals

from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims asserted by the putative Class, live and work outside Pennsylvania.

9.      Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b)(2), because: many actions and omissions giving rise to Plaintiffs' claims occurred in this District; Plaintiffs reside in this District, suffered the losses at issue in this District, and worked for Defendants in this District; Defendants have all worked in this District; and Defendants engaged in the wrongful conduct at issue in this District.

## PARTIES

10.     Plaintiff Christopher Flacco is an adult person who lives and works in Philadelphia County (PA).  At all relevant times, Plaintiff Flacco has been employed as a PPD Chief Police Inspector.

11.     Plaintiff Winton Singletary is an adult person who lives and works in Philadelphia County (PA).  At all relevant times, Plaintiff Singletary has been employed as a PPD Captain, Inspector or Chief Police Inspector-Patrol.

12.     Defendant Charles Ramsey is an adult person who lives and works in Philadelphia County (PA).  Defendant Ramsey served as PPD Commissioner from January 2008 to January 2016.

13.     Defendant Richard Ross, Jr. is an adult person who lives and works in Philadelphia County (PA) and Maricopa County (AZ).  Defendant Ross served as PPD Commissioner from January 2016 to August 2019.

14.     Defendant John Stanford, Jr. is an adult person who lives and works in Philadelphia County (PA).  Defendant Stanford served as Acting PPD Commissioner from August 2019 to December 2019.

15.     Defendant Danielle Outlaw is an adult person who lives in Montclair County (NJ) and works in Manhattan County (NY).  Defendant Outlaw served as PPD Commissioner from December 2019 to September 2023.

16.     Defendant Kevin Bethel is an adult person who lives and works in Montgomery County (PA).  Defendant Bethel has served as PPD Commissioner since November 2023.

17.     Defendant Albert D'Attilio is an adult person who lives and works in Philadelphia County (PA).  Defendant D'Attilio served as OHR Director from before September 2013 to March 2016.

18.     Defendant Pedro Rodriguez is an adult person who lives and works in Philadelphia County (PA).  Defendant Rodriguez served as OHR Director from May 2016 to early 2019.

19.     Defendant Michael Zaccagni is an adult person who lives and works in Philadelphia County (PA).  Defendant Zaccagni has served as Philadelphia Office of Human Resources ("OHR") Director since June 2019.

## EMPLOYMENT STATUS ALLEGATIONS

20.     Throughout the relevant period, Defendants have been ultimately, directly, and jointly responsible for administering, applying, enforcing, and interpreting all hours of work, human resources, overtime, payroll, and wage and hour policies and systems applied to, and used by, PPD ranking officers, and for ensuring Civil Service System Regulations were properly implemented and effectuated with respect to PPD ranking officers.

21.     Throughout the relevant period, Defendants have been ultimately, directly, and jointly responsible for authorizing PPD ranking officers to perform emergency work, assigning PPD ranking officers to perform emergency work, providing PPD ranking officers with a system to track the time they spent performing authorized emergency work, approving and submitting

PPD ranking officers' authorized emergency work time to be paid, and ensuring that PPD ranking officers were properly paid for all their authorized emergency work.

22.     Throughout the relevant period, Defendants' relationship with PPD ranking officers has borne the hallmarks of an employer-employee relationship, because Defendants exercised significant control over the terms and conditions of their employment, including:

> a.     Managing and overseeing the employment application process for PPD ranking officers;
>
> b.     Determining if PPD ranking officers would be hired;
>
> c.     Managing and overseeing the job-related training provided to PPD ranking officers;
>
> d.     Setting and approving work schedules for PPD ranking officers;
>
> e.     Assigning the work done by PPD ranking officers and indicating how that work would be performed;
>
> f.     Tracking the hours PPD ranking officers worked, approving these hours to be paid, submitting these hours to payroll, and ensuring these hours were properly paid;
>
> g.     Directing and controlling all aspects of PPD ranking officers' work;
>
> h.     Reviewing and evaluating PPD ranking officers' job performance;
>
> i.     Determining the policies and procedures relating to PPD ranking officers' employment and how these policies were applied and enforced;
>
> j.     Determining the scope and nature of any discipline imposed on PPD ranking officers;
>
> k.     Determining whether PPD ranking officers would be promoted, transferred, suspended, or terminated; and

l.      Tracking the creation of CSR relevant to PPD ranking officers, and ensuring all such Regulations were properly applied and effectuated.

23.     Throughout the relevant period, Defendants have been ultimately, directly, and jointly responsible for administering, applying, enforcing, and interpreting all hours of work, human resources, overtime, payroll, and wage and hour policies and systems applied to, and used by, PPD ranking officers, and for ensuring Civil Service System Regulations were properly implemented and effectuated with respect to PPD ranking officers.

## BACKGROUND FACTS

24.     Historically, under the Collective Bargaining Agreement between the City of Philadelphia and Fraternal Order of Police Lodge No. 5 ("CBA"), PPD ranking officers were not eligible to receive time-and-a-half overtime pay for all hours they worked over 40 hours per week and, instead, were only eligible to earn extra straight-time pay for extra hours worked on seven specific days each year:

     **J.      Commanders**

1.  Officers at the rank of Captain and above shall receive straight time pay for all hours worked on the following four occasions: Mummers' Parade, Fourth of July, Greek Picnic, and Bike Race.

2.  Commanders shall receive straight time pay for all hours worked at the Puerto Rican Day parade.

3.  Commanders shall receive straight time pay for working one weekend per year in Weekend Command. There shall be no pay for any stand-by time.

*See* CBA, p. 60 (Exhibit A).

25.     Independent of the CBA, the CSC enacted CSR 6.115-7 to provide certain non-police classes of City employees with an entitlement to overtime wages.  *See* CSR 6.115-7.

26.     Thereafter, the CSC enacted Interim Regulations to expand both the classes of employees eligible for overtime wages and the types of work that qualified for overtime wages. *See* CSR 31.03-31.27.

27.     Thereafter, on September 23, 2013, the CSC enacted additional, retroactive amendments to its Regulations that further expanded the classes of employees eligible for overtime wages and the types of work that qualified for overtime wages.  *See* CSR 31.02-31.99; Nov. 20, 2013 Memo (Exhibit B).

28.     Among these Retroactive Regulations was CSR 31.06 ("Emergency overtime pay for ranking officers in the police and fire departments").  CSR 31.06 expressly entitled PPD ranking officers to be paid "their then-regular [*i.e.,* straight-time] rate of pay" for all overtime hours their respective commissioners authorized them to work "during a period of emergency nature."  *See* Nov. 13, 2013 Memo, p. 3 (describing CSR 31.06) (Exhibit B).

29.     On November 13, 2013, Defendant D'Attilio sent a Memorandum notifying "*All Offices, Boards And Commissions*" about the new "Amendments to the Civil Service Regulations," including retroactive regulation CSR 31.06, described as "Effective 9/23/2013."  *Id.* (emphasis added).  Importantly, Defendant D'Attilio did not address his Memorandum to PPD ranking officers, or instruct recipients to share this Memorandum with PPD ranking officers.  Nor did Defendant D'Attilio address his Memorandum to any union official representing PPD ranking officers, or instruct recipients to share this Memorandum with any union official representing PPD ranking officers.  *Id.*

30.     Since September 23, 2013, pursuant to the Philadelphia Home Rule Charter, CSC Regulations, Defendant D'Attilio's Memorandum, and multiple PPD policies and practices, the PPD Commissioner and OHR Director shared responsibility for: implementing CSR 31.06 with

respect to all PPD ranking officers; notifying all PPD ranking officers of their entitlement to be paid additional wages for authorized emergency work; and ensuring all PPD ranking officers' emergency work was properly tracked, authorized, and paid. *Id. See, e.g.,* Home Rule Charter, Art. VII, Ch. 1 (Personnel Director), § 7-100 (Civil Service); Home Rule Charter, Art. VII, Ch. 4 (Civil Service Regulations), § 7-400 (Preparation and Adoption); Home Rule Charter, Art. VII, Ch. 4 (Civil Service Regulations), § 7-401 (Contents); CSR 1.01 ("It is the purpose of these Regulations to implement the Charter provisions… contained in policies and procedures covering… personnel administration").

31.     Despite knowing about the relevant CSC Regulations and Amendments, and being charged with properly effectuating and applying them, Defendants acted outside the scope of their employment and subverted the requirement that PPD ranking officers be paid for their authorized emergency work by failing to implement CSR 31.06 with respect to any PPD ranking officer, failing to notify PPD ranking officers of their entitlement to be paid additional wages for authorized emergency work, and failing to ensure that PPD ranking officers' emergency work was paid under CSR 31.06 at any point since September 23, 2013.

32.     During their respective periods of employment with the City, Defendants were all personally involved with, and responsible for, all wage and hour functions, policies, and systems that relate to Plaintiff's claims.

33.     Despite knowing about the wage and hour functions, policies, and systems that relate to Plaintiff's claims, and being charged with properly effectuating and applying them, Defendants acted outside the scope of their employment and subverted these functions, policies, and systems by failing to implement CSR 31.06 with respect to any PPD ranking officer, failing to notify PPD ranking officers of their entitlement to be paid additional wages for authorized

emergency work, and failing to ensure that PPD ranking officers' authorized emergency work was paid under CSR 31.06 at any point since September 23, 2013.

34.     Defendants controlled virtually every aspect of PPD ranking officers' work that relate to the claims pled in this action, including: implementing and effectuating wage and hour policies and regulations; informing employees of all applicable wage and hour entitlements, policies, and regulations; scheduling and authorizing emergency work; ensuring PPD ranking officers' authorized emergency work was properly tracked and reported; reviewing and authorizing PPD ranking officers' overtime hours and wages; ensuring that wages were properly paid for all hours PPD ranking officers worked, including their authorized emergency work; controlling the systems and procedures used to assign and track PPD ranking officers' work and approve it for payroll purposes; and effectuating and applying CSR 31.06 to ensure required wages were paid for authorized emergency work.  By virtue of their control over all these aspects of PPD ranking officers' work and pay, Defendants have prevented PPD ranking officers from receiving any wages for authorized emergency work they have performed since September 23, 2013.

35.     As a result of Defendants' successful subversion of their duties relating to CSR 31.06 and the wage and hour functions, policies, and systems that relate to Plaintiff's claims, almost a decade passed without any PPD ranking officer learning of their entitlement to be paid for the authorized emergency work they performed.

36.     Since September 2013, Defendants have prepared, approved, and issued scores of Operations Orders requiring PPD ranking officers to perform authorized emergency work for specific events, and describing this work.  Although Defendants have known both that their Operations Orders require PPD ranking officers to perform authorized emergency work and that

CSR 31.06 requires PPD ranking officers to be paid for this work, Defendants did not approve or cause any wages to be paid for this work.

37.     Since September 2013, Defendants have been responsible for enforcing the PPD Standard Operating Procedures ("SOPs"), including SOPs requiring PPD ranking officers to perform authorized emergency work, and describing this work.  Although Defendants have known both that certain SOPs require PPD ranking officers to perform authorized emergency work and that CSR 31.06 requires PPD ranking officers to be paid for this work, Defendants did not approve or cause any wages to be paid for this work.

38.     Since September 2013, Defendants have maintained timekeeping policies and procedures requiring PPD ranking officers to attribute all their authorized emergency work to "Overtime Code 31," designated for "administrative" work.  Although Defendants have access to PPD ranking officers' time records, regularly review all "Overtime Code 31" time entries, and know that CSR 31.06 requires PPD ranking officers to be paid for the authorized emergency work entered under this Code, Defendants did not approve or cause any wages to be paid for this work.

39.     At the end of every year since 2013, Defendants have prepared, approved, and issued an annual "Weekend Command Schedule" requiring PPD ranking officers to perform authorized emergency work for specific events scheduled the following year and describing this work.  Although Defendants have known both that Weekend Command Schedules require PPD ranking officers to perform authorized emergency work, and that CSR 31.06 requires PPD ranking officers to be paid for this work, Defendants did not approve or cause any wages to be paid for this work.

40.     From 2013 to 2019, the PPD Commissioner and the PPD Commander Association President met regularly to discuss issues effecting PPD ranking officers.  During these meetings,

the PPD Commander Association President routinely questioned Defendants Ramsey and Ross about failing to pay PPD ranking officers for the authorized emergency work they were required to perform.  Defendants Ramsey and Ross routinely ignored or laughed-off these questions, and did not approve or cause any wages to be paid for this work.

41.     During scores of Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings conducted between 2013 and 2023, PPD ranking officers asked Defendants about being paid for their authorized emergency work in many ways. Defendants routinely ignored or laughed-off these questions, and did not approve or cause any wages to be paid for this work.

42.     For example, during Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings in June 2020 relating to weeks of George Floyd protests, many PPD ranking officers asked Defendant Outlaw about being paid for the authorized emergency work they were required to perform.  Defendant Outlaw uniformly ignored or laughed-off these questions, and did not approve or cause any wages to be paid for this work.

43.     During Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings in October 2020 relating to the shooting death of Walter Wallace, several PPD ranking officers asked Defendant Outlaw about being paid for the authorized emergency work they were required to perform.  Defendant Outlaw uniformly ignored or laughed-off these questions, and did not approve or cause any wages to be paid for this work.

44.     During Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings in June 2022 following the Supreme Court's decision to overturn *Roe v. Wade*, many PPD ranking officers asked Defendant Outlaw about being paid for the authorized

emergency work they were required to perform.  Defendant Outlaw uniformly ignored or laughed-off these questions, and did not approve or cause any wages to be paid for this work.

45.     In February 2023, PPD Captains Robert Heinzeroth and Steven Clark learned about CSR 31.06 after conducting research to inform their ongoing complaints about unpaid work.  To find out if this Regulation was in effect, or had ever been applied as written, Captains Heinzeroth and Clark approached ranking officers they knew in the Philadelphia Fire Department and learned that Fire Department ranking officers had been receiving the overtime pay required by CSR 31.06 for years.

46.     In September 2023, after receiving Operations Orders requiring authorized emergency work relating to a city-wide looting event coordinated by a social media influencer, PPD Chief Inspector Michael McCarrick sent the text of CSR 31.06 to Defendant Stanford with a request to pay PPD ranking officers for their authorized emergency work.  Defendant Stanford ignored this request, and did not approve or cause any wages to be paid for this work.

47.     In October 2023, PPD Deputy Commissioner Krista Dahl-Campbell asked Lieutenant Robert Casselli, a PPD representative to the City's Labor Relations Unit, if CSR 31.06 entitled PPD ranking officers to be paid for performing authorized emergency work.  Lieutenant Casselli responded, confirming that CSR 31.06 required PPD ranking officers to be paid for their authorized emergency work.

48.     On May 15, 2024, based on information PPD Captains Robert Heinzeroth and Steven Clark learned in February 2023, the PPD Commander Association wrote to the Philadelphia City Solicitor, Defendants Bethel and Zaccagni, and others, demanding that CSR 31.06 be implemented for PPD ranking officers as it had been for Fire Department officers, and that PPD

ranking officers be paid wages for all the authorized emergency work they had performed since September 23, 2013.  *See* May 15, 2024 Letter (Exhibit C).

49.     Despite all these efforts, a June 2024 lawsuit filed in the Philadelphia Court of Common Pleas, and the filing of this action in August 2024, Defendants have nevertheless steadfastly refused to implement CSR 31.06 with respect to PPD ranking officers, refrained from affirmatively notifying PPD ranking officers of their entitlement to be paid for their authorized emergency work, and failed to pay any PPD ranking officer for this work.

## PLAINTIFF-SPECIFIC ALLEGATIONS

50.     At all relevant times, Plaintiffs Flacco and Singletary have been PPD ranking officers within the meaning of CSR 31.06.

51.     From September 23, 2013 to August 26, 2020, Plaintiff Flacco served as Chief Inspector of the Office of Professional Responsibility.  At the direction of his commanding officer, Plaintiff Flacco spent approximately 400 approved overtime hours responding to designated emergency events, like officer-involved shootings, that qualify for overtime pay under CSR 31.06. Although Plaintiff Flacco properly tracked and recorded all these hours under "Overtime Code 31," Defendants did not pay him the wages CSR 31.06 requires for any of this work.

52.     From August 26, 2020 to present, Plaintiff Flacco has served in an operational capacity as Chief Police Inspector in the Narcotics Division.  At the direction of his commanding officers, Plaintiff Flacco has spent at least 350 overtime hours responding to designated emergency events like riots, election protests, looting events, and anti-Israel protests that qualify for overtime pay under CSR 31.06.  Although Plaintiff Flacco properly tracked and recorded all these hours under "Overtime Code 31," Defendants did not pay him the wages CSR 31.06 requires for any of this work.

53.     From September 23, 2013 to present, Plaintiff Singletary has served in an operational capacity as a S.W.A.T. Captain, Special Operations Inspector, and Patrol Chief Inspector.  At the direction of his commanding officers, Plaintiff Singletary has spent at least 500 overtime hours responding to designated emergency events like officer involved shootings, active shooters, mass shootings, barricades, riots, election protests, looting events, and anti-Israel protests that qualify for overtime pay under CSR 31.06.  Although Plaintiff Singletary properly tracked and recorded all these hours under "Overtime Code 31," Defendants did not pay him the wages CSR 31.06 requires for any of this work.

## CLASS ACTION ALLEGATIONS

54.     Plaintiffs bring their claims as a class action pursuant to Fed. R. Civ. P. 23 for a putative Class including: "All Philadelphia Police Captains, Staff Inspectors, Inspectors, or Chief Inspectors who, at any time since September 23, 2013, performed authorized overtime work during an emergency within the meaning of CSR 31.06, and were not paid all wages owed for this work." Plaintiffs reserve the right to amend this definition as necessary.

55.     Plaintiffs belong to the Class, because they worked in the identified positions during the relevant period and performed authorized overtime work during an emergency within the meaning of CSR 31.06, and were not paid all wages owed for this work.

56.     Class treatment of Plaintiffs' claims is appropriate because the putative Class satisfies the requirements of Fed. R. Civ. P. 23.

57.     The Class members are so numerous that joinder of all their individual claims would be impracticable.  Well over 100 people meet the Class definition.

58.     Plaintiffs' claims are typical of the claims belonging to the Class members. Plaintiffs and the Class members are all similarly-situated employees who performed similar job

duties, were subject to the same policies and procedures, and suffered the same type of harm because of Defendants' common course of wrongful conduct.

59. There are material questions of law or fact common to the Class members because, as discussed throughout this filing, Defendants engaged in a common course of conduct that violated the Class members' legal rights. The legality of Defendants' actions will be demonstrated by applying generally applicable legal principles to common evidence. Any individual questions Plaintiffs' claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

> a.  Whether Plaintiff and the Class members have been subjected to materially-identical timekeeping and compensation policies;
>
> b.  Whether Defendants have maintained policies or procedures to keep accurate, contemporaneous records of the hours worked by Plaintiff and the Class members;
>
> c.  Whether a commissioner's authorization to perform emergency work is sufficient to mandate payment of overtime hours under CSR 31.06;
>
> d.  Whether the Class members knew about CSR 31.06 or their right to be paid for their emergency work under this provision;
>
> e.  Whether the Class members failed to receive additional wages owed to them under CSR 31.06 for emergency work they performed;
>
> f.  Whether the discovery rule, or Defendants' acts of fraudulent concealment, have tolled the statute(s) of limitations applicable to Plaintiffs' claims;
>
> g.  Whether defendants intentionally denied Plaintiffs and the Class members compensation owed pursuant to the WPCL; and
>
> h.  Whether Defendants should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the wage and hour violations alleged in this Complaint.

60.     Plaintiffs will fairly and adequately protect the interests of the putative Class members and have retained competent and experienced counsel for this purpose.

61.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual Class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation for at least the following reasons:

> a.     absent a class action, the putative Class members will be essentially unable to redress the conduct pled here, Defendants' violations will continue without remedy and Defendants' employees will continue to be harmed;
>
> b.     a class action will permit an orderly and expeditious administration of class claims, foster economies of time, effort, and expense;
>
> c.     this lawsuit presents no particularly unusual or difficult issues that would impede its management as a class action; and
>
> d.     Defendants have acted on grounds generally applicable to the putative Class members, making class-wide management appropriate.

62.     Allowing Plaintiffs' claims to proceed as a class action will be superior to requiring the individual adjudication of each Class member's claim, since requiring 126 or more hourly-paid employees to file and litigate individual wage claims would place an undue burden on Defendants, the Class members, and this Court.  Class action treatment will allow many similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually.  Moreover, as the damages each Class member has suffered are relatively small, the expenses and burdens associated with individual litigation would make it difficult for them to bring individual claims.  Further, the presentation of separate actions by individual Class members could

create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, substantially impairing the Class members;' ability to protect their interests.

63.     Allowing Plaintiffs' claims to proceed as a class action is also appropriate, because the Pennsylvania Wage Payment and Collection Law expressly permits private class action lawsuits to recover unpaid wages.

**FRAUDULENT CONCEALMENT / EQUITABLE TOLLING**

64.     From at least September 2013 to February 2023, Defendants had a duty to inform PPD ranking officers of their full rights and entitlements under the CSR, and to effectuate the rights granted by CSR 31.06 for all PPD ranking officers.

65.     Since September 2013, Defendants have violated this duty by engaging in a concerted effort to subvert the requirement that PPD ranking officers be paid for their authorized emergency work that included: failing to implement CSR 31.06 with respect to any PPD ranking officer; failing to notify any PPD ranking officer about the existence of CSR 31.06; failing to notify any PPD ranking officer of their right to be paid for their authorized emergency work; routinely laughing-off, or refusing to answer, PPD ranking officers' questions about being paid for the authorized emergency work they were required to perform; saying that PPD ranking officers were not entitled to wages for their authorized emergency work; denying requests to be paid for authorized emergency work; and failing to approve or pay wages to any PPD ranking officer for their emergency work under CSR 31.06.

66.     From at least September 2013 to February 2023, PPD ranking officers exercised reasonable diligence to discover their entitlement to wages for authorized emergency work by engaging in activities that included: attending meetings about authorized emergency work and time

and pay issues and rights; communicating with the City's Labor Relations Unit about authorized emergency work and time and pay issues and rights; and making repeated requests to be paid additional wages for authorized emergency work without such wages being provided.

67.     Despite these efforts, PPD ranking officers did not have actual or constructive knowledge that Defendants' actions had caused them significant harm before February 2023 because of Defendants' affirmative, consistent, and mutual efforts to conceal the existence of CSR 31.06 and subvert the Class members' right to be paid for their authorized emergency work.

68.     For all these reasons, PPD ranking officers are entitled to equitable tolling both under the discovery rule, and because of Defendants' fraudulent concealment of the material facts underlying their claims, and Defendants are estopped from relying on any statute of limitations in defense of this action.

**COUNT I**
**Violation of Fourteenth Amendment Substantive Due Process Under 42 U.S.C.A. § 1983**

69.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

70.     Defendants personally "acted under color of law" in failing to implement CSR 31.06 with respect to PPD ranking officers and denying wages to PPD ranking officers for the authorized emergency work they performed since September 23, 2013 – meaning that Defendants depended upon the cloak of their authority as municipal employees in committing the alleged acts, and this authority enabled Defendants to commit these actions.

71.     Defendants' personal actions caused PPD ranking officers, who were not at-will employees, to be deprived of wages owed to them for the authorized emergency work they performed under CSR 31.06 and in which they had a property interest protected by the Fourteenth Amendment.

72.     Rather than using the money at issue to pay wages to PPD ranking officers for the authorized emergency work they performed, Defendants retained this money to allocate or spend as they chose, according to their individual preferences or priorities.

73.     Defendants deprived PPD ranking officers of these wages without notice or any process whatsoever, much less due process.

74.     PPD ranking officers suffered significant injury because of the deprivation of due process, in that Defendants' actions deprived them of substantial overtime compensation owed for the authorized emergency work they performed during the relevant period.

75.     Defendants' actions "shock the conscience," because they were accomplished only through a dereliction of their own duties and obligations as PPD Commissioners and OHR Directors and, without any notice or process, deprived PPD ranking officers of wages that were: specifically mandated by the CSR; owed for authorized overtime work performed in emergency circumstances to protect the City and its citizens; and paid to commanding officers in the Fire Department under the same CSR provision during the same years for the same reasons.

76.     Defendants are not immune from Plaintiffs' § 1983 claim, because they personally acted outside the scope of their official duties in failing to pay PPD ranking officers all wages owed for their authorized emergency work despite being fully aware of the performance of this work and the substantial benefit it provided to the PPD, the City, its residents, and visitors.

**COUNT II**
**Violation of the Pennsylvania Wage Payment and Collection Law**

77.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

78.     PPD ranking officers are employees covered by the WPCL. *See Paparo v. Borough of Yeadon*, 2024 WL 406753, *12 (E.D. Pa. Feb. 2, 2024).

79.     Defendants are "Employers" as defined by WPCL § 2.1.

80.     Defendants are directly and personally responsible for Plaintiffs' alleged WPCL violation, because they willfully and consistently contravened, and failed to properly administer, apply, enforce, or follow City wage and hour policies, regulations, and systems that required them to provide PPD ranking officers with additional wages for all the authorized emergency work they performed.

81.     Defendants are directly and personally responsible for Plaintiffs' alleged WPCL violation, because they willfully and consistently contravened, and failed to properly administer, Civil Service System rules and regulations that required them to provide PPD ranking officers with additional wages for the authorized emergency work they performed.

82.     Defendants are directly and personally responsible for Plaintiffs' alleged WPCL violation, because they willfully and consistently failed to properly administer, effectuate, or implement CSR 31.06 for the benefit of PPD ranking officers, and refused to authorize or pay additional wages CSR 31.06 required for PPD ranking officers' authorized emergency work.

83.     The Philadelphia Home Rule Charter provides for the preparation and adoption of Civil Service Regulations pertaining to all City employees, including the creation of a "pay plan for all employees in the civil service."  Home Rule Charter § 7-400, 7-401.

84.     The Philadelphia Home Rule Charter mandates that "all employees… shall be paid at [the correct rate] for the class of position in which [they are] employed," *Id.* at §7-401(b), and that City employees be provided with "Hours of work… [and] attendance regulations."  *Id.* at §7-401(r).

85.     The Civil Service Commission effectuated these mandates by promulgating a Regulation relating to "Special compensatory or overtime pay categories" that entitles specific classes of employees to be "compensated for all hours worked in excess of eight (8) hours in any

one calendar day or forty (40) hours in any one calendar week…"  CSR 6.115.

86.     The Civil Service Commission effectuated these mandates by promulgating an Interim Regulation relating to "Emergency overtime pay for ranking officers in the police and fire departments" that entitles PPD ranking officers, when "authorized to work… during a period of emergency nature, in excess of the number of hours of their regularly scheduled work day or… non-scheduled work day" to be paid "for all hours of such overtime work."  CSR 31.06

87.     These promises, made in the Philadelphia Home Rule Charter and Civil Service Commission Regulations, were accepted by virtue of PPD ranking officers' completion of the authorized emergency work assigned to them, giving rise to a contractual duty or obligation on the part of Defendants – who were personally responsible for tracking PPD ranking officers' work time and properly paying all required wages – to provide the promised wage payments.

88.     In addition, by requiring and authorizing PPD ranking officers to perform authorized emergency work, Defendants implied PPD ranking officers would receive all wages owed for this work, giving PPD ranking officers a reasonable expectation of payment for these hours, like for all the other hours they worked and were paid for.

89.     Instead of fulfilling their contractual obligation to provide PPD ranking officers with all wages owed for their authorized emergency work, Defendants breached their obligation to effectuate this requirement and failed to properly track or pay any PPD ranking officer any wages owed for their authorized emergency work at any point since September 23, 2013.

90.     Defendants have no good faith justification or defense for failing to implement or effectuate CSR 31.06 for the benefit of PPD ranking officers, or for denying them the required additional compensation this Regulation requires.

91.     By failing to pay PPD ranking officers promised wages due on regular paydays designated in advance, Defendants violated WPCL § 3.

92.     By failing to notify PPD ranking officers about their entitlement to additional wages for the authorized emergency work they performed, or about the time and place for payment of their overtime hours, Defendants violated WPCL § 4.

93.     By failing to notify PPD ranking officers that they did not intend to pay required wages for their authorized emergency work, Defendants violated WPCL § 4.

94.      WPCL §§ 9.1 and 10 permit Plaintiffs to institute an action on behalf of a group of employees to recover any unpaid wages, liquidated damages, attorneys' fees, litigation costs, and pre-judgment interest.

**COUNT III**
**<u>Negligence</u>**

95.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

96.     At all relevant times, PPD ranking officers have: worked under Defendants; depended on Defendants to notify them about regulations applicable to their work or wages; been answerable to Defendants; been required to follow policies Defendants interpreted and applied; received work schedules and assignments from Defendants; had their work hours tracked by systems Defendants implemented and controlled; had their work hours reviewed and approved by Defendants; received wages through systems Defendants controlled; and relied upon Defendants to ensure they were properly compensated for the work they performed.

97.     The Philadelphia Home Rule Charter and multiple PPD policies, practices, and CSC regulations imposed a legal duty on Defendants to prepare CSR relating to the pay plan and hours of work for PPD ranking officers, submit these CSR for approval to the CSC and Administrative Board, and file all approved CSR with the Department of Records. *See, e.g.,*

23

Philadelphia Home Rule Charter, Art. VII, Ch. 4 (Civil Service Regulations), § 7-400 (Preparation and Adoption).

98.     The Philadelphia Home Rule Charter and multiple PPD policies, practices, and CSC regulations imposed a legal duty on Defendants to provide a pay plan for PPD ranking officers that includes their hours of work and "such other matters as may be proper and necessary." *See, e.g.,* Philadelphia Home Rule Charter, Art. VII, Ch. 4 (Civil Service Regulations), § 7-401 (Contents).

99.     The Philadelphia Home Rule Charter and multiple PPD policies, practices, and CSC regulations imposed a legal duty on Defendants to "administer the service program under the civil service regulations" with respect to PPD ranking officers, expressly including an affirmative duty to maintain a roster of employee positions, pay, and "any change in [] title, pay or status, and other pertinent data." *See, e.g.,* Philadelphia Home Rule Charter, Art. VII, Ch. 1 (The Personnel Director), § 7-100 (Civil Service) (emphasis added).

100.     The Philadelphia Home Rule Charter and multiple PPD policies, practices, and CSC regulations imposed a legal duty on the Personnel Director to "Investigate from time to time the operation and effect of the civil service provisions of this charter and report [their] findings and recommendations to the Mayor and the Civil Service Commission," which necessarily includes an affirmative duty to ensure that any CSR applicable to PPD ranking officers was properly effectuated. *Id.*

101.     Independently of any agreement between PPD ranking officers, their union, Defendants, the PPD, or the City, by virtue of authorizing PPD ranking officers to perform emergency work, Defendants assumed a duty – whether under the Philadelphia Home Rule Charter, PPD policies and practices, CSC regulations, or otherwise – to pay wages for all the

authorized emergency work PPD ranking officers performed.

102.    Independently of any agreement between PPD ranking officers, their union, Defendants, the PPD, or the City, by virtue of the relationship between PPD ranking officers and Defendants, the social utility of PPD ranking officers' emergency work, the nature of the risk imposed by Defendants' conduct and the foreseeability of the harm incurred by PPD ranking officers, the consequences of imposing a duty upon Defendants, and the overall public interest in requiring PPD ranking officers to be paid for their authorized emergency work, Defendants had a duty to pay PPD ranking officers for the authorized emergency work they performed.

103.    Defendants breached their duties of care by, among other things, failing to: implement CSR 31.06 with respect to any PPD ranking officer; notify any PPD ranking officer of their entitlement to be paid additional wages for authorized emergency work; or ensure that PPD ranking officers' authorized emergency work was paid under CSR 31.06 at any point since September 23, 2013.

104.    As a result of Defendants' subversion of PPD policies, practices, and CSC regulations, and their multiple breaches of duty, PPD ranking officers did not know of the existence of CSR 31.06 until approximately February 2023 and, as a result, performed thousands of hours of authorized emergency work without pay.

105.    PPD ranking officers have suffered substantial damages as a direct and proximate result of Defendants' breach of their duties of care that include:

a.    Lost wages for the authorized emergency work they performed;

b.    Lost bonuses or raises based on the unpaid wages sought by this action;

c.    Lost pension (or other) benefits based on the unpaid wages sought by this action; and

d. Other economic damages to be determined through discovery.

106. By negligently failing to implement and effectuate CSR 31.06, Defendants deprived PPD ranking officers of thousands of hours of required additional pay for the authorized emergency work they performed during the relevant period, proximately causing the damages claimed herein.

WHEREFORE, Plaintiffs respectfully pray for an Order:

a. Certifying this matter to proceed as a class action;

b. Approving Plaintiffs as an adequate Class representatives;

c. Appointing Stephan Zouras LLC and Weir Greenblatt Pierce LLP as Class Counsel;

d. Finding that Defendants willfully violated the applicable provisions of the WPCL by failing to pay required additional wages due to Plaintiffs and the Class members;

e. Granting judgment in favor of Plaintiff and the Class members against Defendants on all Counts;

f. Awarding all available compensatory damages in amounts to be determined;

g. Awarding all available liquidated damages in amounts to be determined;

h. Awarding pre-judgment interest on all compensatory damages due;

i. Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

j. Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

k. Awarding any further relief the Court deems just, necessary, and proper; and

l. Maintaining jurisdiction over this action to effectuate any settlement or resolution of Plaintiffs' claims and ensure Defendants' compliance with the foregoing mandates.

Respectfully submitted,

Dated: October 16, 2024

*/s/ David J. Cohen*
David J. Cohen
**STEPHAN ZOURAS LLC**
604 Spruce Street
Philadelphia, PA 19106
215-873-4836
dcohen@stephanzouras.com

James B. Zouras (*pro hac vice*)
**STEPHAN ZOURAS LLC**
222 W. Adams Street, Suite 2020
Chicago, IL  60606
312-233-1550
jzouras@stephanzouras.com

Ronald L. Greenblatt
Patricia V. Pierce
Kasturi Sen
**WEIR GREENBLATT PIERCE LLP**
1339 Chestnut Street, Suite 500
Philadelphia, PA 19107
215-665-8181
rgreenblatt@wgpllp.com
ppierce@wgpllp.com
ksen@wgpllp.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a copy of the foregoing pleading to be served today upon all registered counsel by electronically filing said document with the Clerk of the U.S. District Court of the Eastern District of Pennsylvania.

Dated: October 16, 2024

*/s/ David J. Cohen*

27