## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| CHRISTOPHER FLACCO and WINTON SINGLETARY, **Plaintiffs,** v. DANIELLE OUTLAW, CHARLES RAMSEY, RICHARD ROSS, JR., JOHN STANFORD, JR., KEVIN BETHEL, MICHAEL ZACCAGNI, PEDRO RODRIGUEZ, and ALBERT D'ATTILIO, in their individual capacities, **Defendants.** | Case No. 24-cv-4374-MAK JURY TRIAL DEMANDED |

## THIRD AMENDED CLASS ACTION COMPLAINT

Christopher Flacco and Winton Singletary ("Plaintiffs"), by and through their undersigned counsel, hereby make the following amended allegations against Danielle Outlaw, Charles Ramsey, Richard Ross, Jr., John Stanford, Jr., Kevin Bethel, Michael Zaccagni, Pedro Rodriguez, and Albert D'Attilio ("Defendants") in their individual capacities, based upon actual knowledge, information, belief, and the investigation of counsel:

## NATURE OF THE ACTION

1. Plaintiffs contend that Defendants, acting as joint employers and in their individual capacities, violated Plaintiffs' right to procedural due process under the Fourteenth Amendment to the U.S. Constitution and violated the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S. §§ 260.1, *et seq.* ("WPCL") with respect to Philadelphia Police Department Captains, Staff Inspectors, Inspectors, and Chief Inspectors ("PPD ranking officers"). Defendants' conduct deprived PPD ranking officers of thousands of hours of required overtime compensation for authorized emergency work they performed during the relevant period.

## JURISDICTION AND VENUE

2.      This Court has original, federal question jurisdiction over this action pursuant to 28 U.S.C. §1331, because Plaintiffs allege Defendants have violated their constitutional right to procedural due process and have pled a claim under a federal statute, 42 U.S.C.A. § 1983.

3.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because: many actions and omissions giving rise to Plaintiffs' claims occurred in this District; Plaintiffs reside in this District, suffered the losses at issue in this District, and worked for Defendants in this District; and Defendants all worked in this District and engaged in the wrongful conduct at issue in this District.

## PARTIES

4.      Plaintiff Christopher Flacco is an adult person who lives and works in Philadelphia County (PA).  At all relevant times, Plaintiff Flacco has been employed as a PPD Chief Police Inspector.

5.      Plaintiff Winton Singletary is an adult person who lives and works in Philadelphia County (PA).  At all relevant times, Plaintiff Singletary has been employed as a PPD Captain, Inspector or Chief Police Inspector-Patrol.

6.      Defendant Charles Ramsey is an adult person who lives and works in Philadelphia County (PA).  Defendant Ramsey served as PPD Commissioner from January 2008 to January 2016.

7.      Defendant Richard Ross, Jr. is an adult person who lives and works in Philadelphia County (PA).  Defendant Ross served as PPD Commissioner from January 2016 to August 2019.

8.     Defendant John Stanford, Jr. is an adult person who lives and works in Philadelphia County (PA).  Defendant Stanford served as Acting PPD Commissioner from August 2019 to December 2019.

9.     Defendant Danielle Outlaw is an adult person who lives in Montclair County (NJ) and works in Manhattan County (NY).  Defendant Outlaw served as PPD Commissioner from December 2019 to September 2023.

10.     Defendant Kevin Bethel is an adult person who lives and works in Montgomery County (PA).  Defendant Bethel has served as PPD Commissioner since November 2023.

11.     Defendant Albert D'Attilio is an adult person who lives and works in Philadelphia County (PA).  Defendant D'Attilio served as OHR Director from before September 2013 to March 2016.

12.     Defendant Pedro Rodriguez is an adult person who lives and works in Philadelphia County (PA).  Defendant Rodriguez served as OHR Director from May 2016 to early 2019.

13.     Defendant Michael Zaccagni is an adult person who lives and works in Philadelphia County (PA).  Defendant Zaccagni has served as Philadelphia Office of Human Resources ("OHR") Director since June 2019.

## EMPLOYMENT STATUS ALLEGATIONS

14.     Throughout the relevant period, Defendants have been ultimately, directly, and jointly responsible for administering, applying, enforcing, and interpreting all hours of work, human resources, overtime, payroll, and wage and hour policies and systems applied to, and used by, PPD ranking officers, for ensuring CSR were properly implemented and effectuated with respect to PPD ranking officers, and guaranteeing that PPD ranking officers received due process before being deprived of property rights or interests granted by state law.

15.     Throughout the relevant period, Defendants have been ultimately, directly, and jointly responsible for authorizing PPD ranking officers to perform emergency work, assigning PPD ranking officers to perform emergency work, providing PPD ranking officers with a system to track the time they spent performing authorized emergency work, approving and submitting PPD ranking officers' authorized emergency work time to be paid, and ensuring that PPD ranking officers were properly paid for all their authorized emergency work.

16.     Throughout the relevant period, Defendants' relationship with PPD ranking officers has borne the hallmarks of an employer-employee relationship, because Defendants exercised significant control over the terms and conditions of their employment, including:

a.      Managing and overseeing the employment application process for PPD ranking officers;

b.      Determining if PPD ranking officers would be hired;

c.      Managing and overseeing the job-related training provided to PPD ranking officers;

d.      Setting and approving work schedules for PPD ranking officers;

e.      Assigning the work done by PPD ranking officers and indicating how that work would be performed;

f.      Tracking the hours PPD ranking officers worked, approving these hours to be paid, submitting these hours to payroll, and ensuring these hours were properly paid;

g.      Directing and controlling all aspects of PPD ranking officers' work;

h.      Reviewing and evaluating PPD ranking officers' job performance;

i.      Determining the policies and procedures relating to PPD ranking officers' employment and how these policies were applied and enforced;

     j.     Determining the scope and nature of any discipline imposed on PPD ranking officers;

     k.     Determining whether PPD ranking officers would be promoted, transferred, suspended, or terminated; and

     l.     Tracking the creation of CSR relevant to PPD ranking officers, and ensuring all such Regulations were properly applied and effectuated.

17.     Throughout the relevant period, Defendants have been ultimately, directly, and jointly responsible for administering, applying, enforcing, and interpreting all hours of work, human resources, overtime, payroll, and wage and hour policies and systems applied to, and used by, PPD ranking officers, and for ensuring CSR were properly implemented and effectuated with respect to PPD ranking officers.

18.     Throughout the relevant period, Defendants have been ultimately, directly, and jointly responsible for failing to comply with mandatory CSR provisions requiring PPD ranking officers to be paid for their authorized emergency work, or provide PPD ranking officers with procedural due process before depriving them of these wages.

## **BACKGROUND FACTS**

19.     In 1949, the General Assembly of the Commonwealth of Pennsylvania approved the Philadelphia Home Rule Charter ("Home Rule Charter") which granted the government of the City of Philadelphia ("the City") and its officers extensive administrative, executive, and legislative powers, including the power to "enact ordinances and to make rules and regulations necessary and proper for carrying into execution its powers." Philadelphia Home Rule Charter § 1-100.

20.     The Home Rule Charter created the position of Personnel Director and, among other things, made this person responsible for preparing regulations "pertaining to the position

classification plan, pay plan, hours of work, holidays and annual vacation and sick leave" for review and approval by a Civil Service Commission. *Id.* at § 7-400.

21.     The Home Rule Charter created a Civil Service Commission ("CSC") to investigate personnel administration issues for employees in City service, advise the Mayor and Personnel Director on those issues, approve civil service regulations and amendments thereto, and promote the improvement of City personnel administration, among other things. *Id*. at § 7-200.

22.     The Home Rule Charter mandated the drafting of civil service regulations, including "a position classification plan for all positions in the civil service" (so the same qualifications could be required for, and the same pay schedule could be applied to, all positions in the same class) and "a pay plan for all employees in the civil service" (identifying the rates paid to each employee). *Id.* at § 7-401.

23.     Historically, the Collective Bargaining Agreement between the City and Fraternal Order of Police Lodge No. 5 ("CBA"), did not make PPD ranking officers eligible to receive time-and-a-half overtime pay for all hours they worked over 40 hours per week and, instead, only made them eligible to earn extra straight-time pay for extra hours worked seven specific days each year:

> **J.     Commanders**
>
> 1.     Officers at the rank of Captain and above shall receive straight time pay for all hours worked on the following four occasions: Mummers' Parade, Fourth of July, Greek Picnic, and Bike Race.
>
> 2.     Commanders shall receive straight time pay for all hours worked at the Puerto Rican Day parade.
>
> 3.     Commanders shall receive straight time pay for working one weekend per year in Weekend Command. There shall be no pay for any stand-by time.

*See* CBA, p. 60 (Exhibit A).

24.    Independent of the CBA, the CSC enacted CSR 6.11 (Overtime pay and compensatory time) to provide certain non-police classes of City employees with an entitlement to overtime wages.  *See* CSR 6.115-7 (Special compensatory or overtime pay categories).

25.    Thereafter, the CSC enacted CSR 31 (Interim Regulations) to expand both the classes of employees eligible for overtime wages and the types of work that qualified for overtime wages.  *See* CSR 31.03-31.27.

26.    Thereafter, on September 23, 2013, the CSC enacted additional, retroactive Regulations that further expanded the classes of employees eligible for overtime wages and the types of work that qualified for overtime wages.  *See* CSR 31.02-31.99; Nov. 20, 2013 Memo (Exhibit B).

27.    The September 23, 2013 retroactive Regulations included CSR 31.06 (Emergency overtime pay for ranking officers in the police and fire departments).  CSR 31.06 expressly entitled PPD ranking officers to be paid "their then-regular rate of pay" for all overtime hours their respective commissioners authorized them to work "during a period of emergency nature."  *See* Nov. 13, 2013 Memo, p. 3 (describing CSR 31.06) (Exhibit B).

28.    On November 13, 2013, Defendant D'Attilio sent a Memorandum notifying "*All Offices, Boards And Commissions*" about the September 23, 2013 "Amendments to the Civil Service Regulations," including retroactive Regulation CSR 31.06.  *Id.* (emphasis added). Importantly, Defendant D'Attilio did not address or send his Memorandum to PPD ranking officers, or instruct recipients to share this Memorandum with PPD ranking officers.  Nor did Defendant D'Attilio address his Memorandum to any union official representing PPD ranking officers, or instruct recipients to share this Memorandum with any union official representing PPD ranking officers.  *Id.*

7

29.     Since September 23, 2013, pursuant to the Home Rule Charter, CSC Regulations, Defendant D'Attilio's Memorandum, and multiple PPD policies and practices, the PPD Commissioner and OHR Director shared responsibility for: implementing CSR 31.06 with respect to all PPD ranking officers; notifying all PPD ranking officers of their entitlement to be paid additional wages for authorized emergency work; ensuring all PPD ranking officers' emergency work was properly tracked, authorized, and paid; and guaranteeing that PPD ranking officers received due process before being deprived of any property right or interest the CSC granted. *Id. See, e.g.,* Home Rule Charter, §§ 7-100, 7-400, and 7-401; CSR 1.01 ("It is the purpose of these Regulations to implement the Charter provisions… contained in policies and procedures covering… personnel administration").

30.     Despite actual knowledge of the relevant CSC Regulations and Amendments, and being charged with properly effectuating and applying them, Defendants acted outside the scope of their employment and subverted the requirement that PPD ranking officers be paid for their authorized emergency work by failing to: implement CSR 31.06 with respect to any PPD ranking officer; notify PPD ranking officers of their entitlement to be paid additional wages for authorized emergency work; ensure that PPD ranking officers' emergency work was paid under CSR 31.06 at any point since September 23, 2013; or provide PPD ranking officers with due process (*e.g.,* any notice, any hearing, or any determination) before depriving them of the wages mandated by CSR 31.06.

31.     During their respective periods of employment with the City, Defendants were all personally involved with, and responsible for, all wage and hour functions, policies, and systems that relate to Plaintiff's claims.

32.     Despite actual knowledge of the wage and hour functions, policies, and systems that relate to Plaintiff's claims, and being charged with properly effectuating and applying them, Defendants acted outside the scope of their employment and subverted these functions, policies, and systems by failing to: implement CSR 31.06 with respect to any PPD ranking officer; notify PPD ranking officers of their entitlement to be paid additional wages for authorized emergency work; ensure that PPD ranking officers' emergency work was paid under CSR 31.06 at any point since September 23, 2013; or provide PPD ranking officers with due process before depriving them of the wages mandated by CSR 31.06.

33.     Defendants controlled virtually every aspect of PPD ranking officers' work that relate to the claims pled in this action, including: implementing and effectuating wage and hour policies and regulations; informing employees of all applicable wage and hour entitlements, policies, and regulations; scheduling and authorizing emergency work; ensuring PPD ranking officers' authorized emergency work was properly tracked and reported; reviewing and authorizing PPD ranking officers' overtime hours and wages; ensuring that wages were properly paid for all hours PPD ranking officers worked, including their authorized emergency work; controlling the systems and procedures used to assign and track PPD ranking officers' work and approve it for payroll purposes; and effectuating and applying CSR 31.06 to ensure required wages were paid for authorized emergency work.  By virtue of their control over all these aspects of PPD ranking officers' work and pay, Defendants were able to prevent PPD ranking officers from receiving any wages for authorized emergency work they performed since September 23, 2013.

34.     As a result of Defendants' successful subversion of their duties relating to CSR 31.06, the wage and hour functions, policies, and systems that relate to Plaintiff's claims, and their obligation to provide procedural due process before depriving PPD ranking officers of their

entitlement to wages granted by the CSC in CSR 31.06, almost a decade passed without any PPD ranking officer learning of their entitlement to be paid for their authorized emergency work.

35.     Since September 2013, Defendants have prepared, approved, and issued scores of Operations Orders requiring PPD ranking officers to perform authorized emergency work for specific events, and describing this work.  Although Defendants have known both that their Operations Orders require PPD ranking officers to perform authorized emergency work and that CSR 31.06 requires PPD ranking officers to be paid for this work, Defendants did not cause any wages to be paid for this work or provide PPD ranking officers with any procedural due process before denying or withholding these wages.

36.     Since September 2013, Defendants have been responsible for enforcing the PPD Standard Operating Procedures ("SOPs"), including SOPs requiring PPD ranking officers to perform authorized emergency work, and describing this work.  Although Defendants have known both that certain SOPs require PPD ranking officers to perform authorized emergency work and that CSR 31.06 requires PPD ranking officers to be paid for this work, Defendants did not cause any wages to be paid for their authorized emergency work or provide PPD ranking officers with any procedural due process before denying or withholding wages owed for this work.

37.     Since September 2013, Defendants have maintained timekeeping policies and procedures requiring PPD ranking officers to attribute all their authorized emergency work to "Overtime Code 31," designated for "administrative" work.  Although Defendants have access to PPD ranking officers' time records, regularly review all "Overtime Code 31" time entries, and know that CSR 31.06 requires PPD ranking officers to be paid for the authorized emergency work entered under this Code, Defendants did not cause any wages to be paid for this work or provide PPD ranking officers with any procedural due process before denying or withholding these wages.

38.     At the end of every year since 2013, Defendants have prepared, approved, and issued an annual "Weekend Command Schedule" requiring PPD ranking officers to perform authorized emergency work for specific events scheduled the following year and describing this work.  Although Defendants have known both that Weekend Command Schedules require PPD ranking officers to perform authorized emergency work, and that CSR 31.06 requires PPD ranking officers to be paid for this work, Defendants did not cause any wages to be paid for this work or provide PPD ranking officers with any procedural due process before denying or withholding these wages.

39.     From 2013 to 2019, the PPD Commissioner and the PPD Commander Association President met regularly to discuss issues effecting PPD ranking officers.  During these meetings, the PPD Commander Association President routinely questioned Defendants Ramsey and Ross about failing to pay PPD ranking officers for the authorized emergency work they were required to perform.  Defendants Ramsey and Ross routinely ignored or laughed-off these questions, and did not cause any wages to be paid for this work or provide PPD ranking officers with any procedural due process before denying or withholding these wages.

40.     During scores of Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings conducted between 2013 and 2023, PPD ranking officers asked Defendants about being paid for their authorized emergency work in many ways. Defendants routinely ignored or laughed-off these questions, and did not cause any wages to be paid for this work or provide PPD ranking officers with any procedural due process before denying or withholding these wages.

41.     For example, during Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings in June 2020 relating to weeks of George Floyd protests,

many PPD ranking officers asked Defendant Outlaw about being paid for the authorized emergency work they were required to perform. Defendant Outlaw uniformly ignored or laughed-off these questions, and did not cause any wages to be paid for this work or provide PPD ranking officers with any procedural due process before denying or withholding these wages.

43. During Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings in October 2020 relating to the shooting death of Walter Wallace, several PPD ranking officers asked Defendant Outlaw about being paid for the authorized emergency work they were required to perform. Defendant Outlaw uniformly ignored or laughed-off these questions, and did not cause any wages to be paid for this work or provide PPD ranking officers with any procedural due process before denying or withholding these wages.

43. During Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings in June 2022 following the Supreme Court's decision to overturn *Roe v. Wade*, many PPD ranking officers asked Defendant Outlaw about being paid for the authorized emergency work they were required to perform. Defendant Outlaw uniformly ignored or laughed-off these questions, and did not cause any wages to be paid for this work or provide PPD ranking officers with any procedural due process before denying or withholding these wages.

44. In February 2023, PPD Captains Robert Heinzeroth and Steven Clark learned about CSR 31.06 after conducting research to inform their ongoing complaints about unpaid work. To find out if this Regulation was in effect, or had ever been applied as written, Captains Heinzeroth and Clark approached ranking officers they knew in the Philadelphia Fire Department and learned that Fire Department ranking officers had been receiving the overtime pay required by CSR 31.06 for years.

45.     In September 2023, after receiving Operations Orders requiring authorized emergency work relating to a city-wide looting event coordinated by a social media influencer, PPD Chief Inspector Michael McCarrick sent the text of CSR 31.06 to Defendant Stanford with a request to pay PPD ranking officers for their authorized emergency work.  Defendant Stanford ignored this request, and did not cause any wages to be paid for this work or provide Chief Inspector McCarrick or any other PPD ranking officer with any procedural due process before denying or withholding these wages.

46.     In October 2023, PPD Deputy Commissioner Krista Dahl-Campbell asked Lieutenant Robert Casselli, a PPD representative to the City's Labor Relations Unit, if CSR 31.06 entitled PPD ranking officers to be paid for performing authorized emergency work.  Lieutenant Casselli responded, confirming that CSR 31.06 required PPD ranking officers to be paid for their authorized emergency work.

47.     On May 15, 2024, based on information PPD Captains Robert Heinzeroth and Steven Clark learned in February 2023, the PPD Commander Association wrote to the Philadelphia City Solicitor, Defendants Bethel and Zaccagni, and others, demanding that CSR 31.06 be implemented for PPD ranking officers as it had been for Fire Department officers, and that PPD ranking officers be paid wages for all the authorized emergency work they had performed since September 23, 2013.  *See* May 15, 2024 Letter (Exhibit C).

48.     Despite all these efforts, a June 2024 lawsuit filed in the Philadelphia Court of Common Pleas, the filing of this action in August 2024, and any discussions or investigations related thereto, Defendants have nevertheless steadfastly: refused to implement CSR 31.06 with respect to PPD ranking officers; refrained from affirmatively notifying PPD ranking officers of their entitlement to be paid for their authorized emergency work; refused to pay any PPD ranking

officer for this work; and failed to provide procedural due process to any PPD ranking officer relating to their denial of wages mandated by the CSC and CSR 31.06.

## PLAINTIFF-SPECIFIC ALLEGATIONS

49.     At all relevant times, Plaintiffs Flacco and Singletary have been PPD ranking officers within the meaning of CSR 31.06.

50.     From September 23, 2013 to August 26, 2020, Plaintiff Flacco served as Chief Inspector of the Office of Professional Responsibility.  At the direction of his commanding officer, Plaintiff Flacco spent approximately 400 approved overtime hours responding to designated emergency events, like officer-involved shootings, that qualify for overtime pay under CSR 31.06. Although Plaintiff Flacco properly tracked and recorded all these hours under "Overtime Code 31," Defendants did not pay him the wages CSR 31.06 requires for any of this work or provide any procedural due process before depriving him of these wages.

51.     From August 26, 2020 to present, Plaintiff Flacco has served in an operational capacity as Chief Police Inspector in the Narcotics Division.  At the direction of his commanding officers, Plaintiff Flacco has spent at least 350 overtime hours responding to designated emergency events like riots, election protests, looting events, and anti-Israel protests that qualify for overtime pay under CSR 31.06.  Although Plaintiff Flacco properly tracked and recorded all these hours under "Overtime Code 31," Defendants did not pay him the wages CSR 31.06 requires for any of this work, pay him consistent with his expectation this work was compensable, or provide any procedural due process before depriving him of these wages.

52.     From September 23, 2013 to present, Plaintiff Singletary has served in an operational capacity as a S.W.A.T. Captain, Special Operations Inspector, and Patrol Chief Inspector.  At the direction of his commanding officers, Plaintiff Singletary has spent at least 500

overtime hours responding to designated emergency events like officer involved shootings, active shooters, mass shootings, barricades, riots, election protests, looting events, and anti-Israel protests that qualify for overtime pay under CSR 31.06.  Although Plaintiff Singletary properly tracked and recorded all these hours under "Overtime Code 31," Defendants did not pay him the wages CSR 31.06 requires for any of this work, pay him consistent with his expectation this work was compensable, or provide any procedural due process before depriving him of these wages.

## CLASS ACTION ALLEGATIONS

53.    Plaintiffs bring their claims as a class action pursuant to Fed. R. Civ. P. 23 for a putative Class including: "All PPD Captains, Staff Inspectors, Inspectors, or Chief Inspectors who, at any time since September 23, 2013, performed authorized overtime work during an emergency within the meaning of CSR 31.06 without being paid all wages owed for this work."  Plaintiffs reserve the right to amend this definition as necessary.

54.    Plaintiffs belong to the Class, because they worked in the identified positions during the relevant period and performed authorized overtime work during an emergency within the meaning of CSR 31.06, and were not paid all wages owed for this work.

55.    Class treatment of Plaintiffs' claims is appropriate because the putative Class satisfies the requirements of Fed. R. Civ. P. 23.

56.    The Class members are so numerous that joinder of all their individual claims would be impracticable.  More than 200 people are believed to meet the Class definition.

57.    Plaintiffs' claims are typical of the claims belonging to the Class members. Plaintiffs and the Class members are all similarly-situated employees who performed similar job duties, were subject to the same policies and procedures, and suffered the same type of harm because of Defendants' common course of wrongful conduct.

58.     There are material questions of law or fact common to the Class members because, as discussed throughout this filing, Defendants engaged in a common course of conduct that violated the Class members' legal rights.  The legality of Defendants' actions will be demonstrated by applying generally applicable legal principles to common evidence.  Any individual questions Plaintiffs' claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

> a.     Whether Plaintiff and the Class members have been subjected to materially-identical timekeeping and compensation policies;

> b.     Whether Defendants have maintained policies or procedures to keep accurate, contemporaneous records of the hours worked by Plaintiff and the Class members;

> c.     Whether a commissioner's authorization to perform emergency work is sufficient to mandate payment of overtime hours under CSR 31.06;

> d.     Whether the Class members knew about CSR 31.06 or their right to be paid for their emergency work under this provision;

> e.     Whether the Class members failed to receive additional wages owed to them under CSR 31.06 for emergency work they performed;

> f.     Whether the discovery rule, or Defendants' acts of fraudulent concealment, have tolled the statute(s) of limitations applicable to Plaintiffs' claims;

> g.     Whether defendants intentionally denied Plaintiffs and the Class members compensation owed pursuant to the WPCL; and

> h.     Whether Defendants should be required to pay compensatory damages, liquidated damages and/or attorneys' fees and costs, or enjoined from continuing the violations of law alleged in this Complaint.

59.     Plaintiffs will fairly and adequately protect the interests of the putative Class members and have retained competent and experienced counsel for this purpose.

60.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual Class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation for at least the following reasons:

> a.     absent a class action, the putative Class members will be essentially unable to redress the conduct pled here, Defendants' violations of law will continue without remedy and Defendants' employees will continue to be harmed;
>
> b.     a class action will permit an orderly and expeditious administration of class claims, foster economies of time, effort, and expense;
>
> c.     this lawsuit presents no particularly unusual or difficult issues that would impede its management as a class action; and
>
> d.     Defendants have acted on grounds generally applicable to the putative Class members, making class-wide management appropriate.

61.     Allowing Plaintiffs' claims to proceed as a class action will be superior to requiring the individual adjudication of each Class member's claim, since requiring 200 or more hourly-paid employees to file and litigate individual wage claims would place an undue burden on Defendants, the Class members, and this Court.  Class action treatment will allow many similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expenses if these claims were brought individually.  Moreover, as the damages each Class member has suffered are relatively small, the expenses and burdens associated with individual litigation would make it difficult for them to bring individual claims.  Further, the presentation of separate actions by individual Class members could

create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, substantially impairing the Class members;' ability to protect their interests.

62.     Allowing Plaintiffs' claims to proceed as a class action is also appropriate, because the WPCL expressly permits private class action lawsuits to recover unpaid wages.

### FRAUDULENT CONCEALMENT / EQUITABLE TOLLING

63.     From at least September 2013 to February 2023, Defendants had a duty to inform PPD ranking officers of their full rights and entitlements under the CSR, to effectuate the rights granted by CSR 31.06 for all PPD ranking officers, and to provide them with due process before depriving them of wages mandated by CSR 31.06.

64.     Since September 2013, Defendants have violated all these duties by engaging in a concerted effort to subvert the requirement that PPD ranking officers be paid for their authorized emergency work that included: failing to implement CSR 31.06 with respect to any PPD ranking officer; failing to notify any PPD ranking officer about the existence of CSR 31.06; failing to notify any PPD ranking officer of their right to be paid for their authorized emergency work; routinely laughing-off, or refusing to answer, PPD ranking officers' questions about being paid for the authorized emergency work they were required to perform; saying that PPD ranking officers were not entitled to wages for their authorized emergency work; denying requests to be paid for authorized emergency work; failing to approve or pay wages to any PPD ranking officer for their emergency work under CSR 31.06; and failing to provide any PPD ranking officer with due process before depriving them of wages mandated by CSR 31.06.

65.     From at least September 2013 to February 2023, PPD ranking officers exercised reasonable diligence to discover their entitlement to wages for authorized emergency work by

engaging in activities that included: attending meetings about authorized emergency work and time and pay issues and rights; communicating with the City's Labor Relations Unit about authorized emergency work and time and pay issues and rights; and making repeated requests to be paid additional wages for authorized emergency work without such wages being provided.

66.    Despite these efforts, PPD ranking officers did not have actual or constructive knowledge that Defendants' actions had caused them significant harm before February 2023 because of Defendants' affirmative, consistent, and mutual efforts to conceal the existence of CSR 31.06 and subvert the Class members' right to be paid for their authorized emergency work.

67.    For all these reasons, PPD ranking officers are entitled to equitable tolling both under the discovery rule, and because of Defendants' fraudulent concealment of the material facts underlying their claims, and Defendants are estopped from relying on any statute of limitations in defense of this action.

### COUNT I
### Violation of Fourteenth Amendment Procedural Due Process Under 42 U.S.C.A. § 1983

68.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

69.    The Due Process Clause of the Fourteenth Amendment has a procedural component that protects individuals against governmental deprivations of life, liberty, or property without due process of law.  U.S. Const. Amend. XIV, § 1.

70.    A claim under 42 U.S.C.A. § 1983 based upon procedural due process has three elements: (1) a liberty or property interest protected by state law; (2) a deprivation of the interest by the government; and (3) a lack of due process.

71.    At all times relevant to Plaintiffs' claims, the CSR prepared by the Personnel Director, approved by the CSC, and effectuated under the Home Rule Charter have governed the terms of public employment in the City.

72.     Since September 23, 2013, CSR 31.06 has required that PPD ranking officers: "authorized to work by their respective Commissioners during a period of emergency nature, in excess of the number of hours of their regularly scheduled work day or, for all hours worked on a nonscheduled work day shall, for all hours of such overtime work, be paid at their then regular (*sic*) rate of pay."

73.     As a result of the mandate in CSR 31.06 that PPD ranking officers be paid for their authorized emergency work, PPD ranking officers had a reasonable expectation of being paid for their authorized emergency work, creating a protected property interest in those wages.

74.     Defendants personally acted under color of law in failing to implement CSR 31.06 with respect to PPD ranking officers and denying wages to PPD ranking officers for the authorized emergency work they have performed since September 23, 2013 – meaning that Defendants depended upon the cloak of their authority as municipal employees in committing the alleged acts, and this authority enabled Defendants to commit these actions.

75.     Defendants' personal actions deprived PPD ranking officers of wages owed under CSR 31.06 for the authorized emergency work they performed, and in which they had a protected property interest.

76.     Rather than using the money at issue to pay wages to PPD ranking officers for the authorized emergency work they performed, Defendants retained this money to allocate or spend as they chose – serving their own interests, preferences, or priorities instead of complying with the express wage payment requirement in CSR 31.06.

77.     Defendants deprived PPD ranking officers of wages mandated by CSR 31.06 without first providing them any notice, much less adequate notice.

78.     Defendants deprived PPD ranking officers of wages mandated by CSR 31.06 without first providing them any opportunity to be heard, much less an adequate opportunity to be heard.

79.     Defendants deprived PPD ranking officers of wages mandated by CSR 31.06 without first providing them a formal decision justifying their action.

80.     Instead, Defendants simply ignored or laughed-off PPD ranking officers' questions about wages owed for their authorized emergency work and did not cause any wages to be paid for PPD ranking officers' authorized emergency work.

81.     Defendants' actions have caused PPD ranking officers significant harm by denying them compensation CSR 31.06 expressly required for the authorized emergency work they performed over a period of more than ten years.

82.     Defendants are not immune from Plaintiffs' § 1983 claim, because they personally acted outside the scope of their official duties, ignored mandatory provisions of the Home Rule Charter, ignored mandatory provisions of the CSR, failed to ensure PPD ranking officers were paid all wages owed for their authorized emergency work under CSR 31.06, and failed to provide PPD ranking officers with due process before depriving them of a state-created property right – all despite being fully aware of the performance of this work, the substantial benefit this work provided to the PPD, the City, its residents, and visitors, and the fact that qualifying employees in the Philadelphia Fire Department were routinely paid the wages CSR 31.06 requires.

**COUNT II**
**Violation of the WPCL**

83.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

84.     PPD ranking officers are employees covered by the WPCL. *See Paparo v. Borough of Yeadon*, 2024 WL 406753, *12 (E.D. Pa. Feb. 2, 2024).

85.    Defendants are "Employers" as defined by WPCL § 2.1.

86.    Defendants are directly and personally responsible for violating the WPCL with respect to Plaintiffs, because they willfully and consistently contravened, and failed to properly administer, apply, enforce, or follow City wage and hour policies, regulations, and systems that required them to provide PPD ranking officers with additional wages for all the authorized emergency work they performed.

87.    Defendants are directly and personally responsible for violating the WPCL with respect to Plaintiffs, because they willfully and consistently contravened, and failed to properly administer, CSR that required them to provide PPD ranking officers with additional wages for the authorized emergency work they performed.

88.    Defendants are directly and personally responsible for violating the WPCL with respect to Plaintiffs, because they willfully and consistently failed to properly administer, effectuate, or implement CSR 31.06 for the benefit of PPD ranking officers, and refused to authorize or pay additional wages CSR 31.06 required for PPD ranking officers' authorized emergency work.

89.    The Home Rule Charter provides for the preparation and adoption of Civil Service Regulations pertaining to all City employees, including the creation of a "pay plan for all employees in the civil service."  Home Rule Charter §§ 7-400 and 7-401.

90.    The Home Rule Charter mandates that "all employees… shall be paid at [the correct rate] for the class of position in which [they are] employed," *id.* at § 7-401(b), and that City employees be provided with "Hours of work… [and] attendance regulations," *Id.* at § 7-0401(r).

91.    The CSC effectuated these mandates by promulgating a Regulation relating to "Special compensatory or overtime pay categories" that entitles specific classes of employees to

be "compensated for all hours worked in excess of eight (8) hours in any one calendar day or forty (40) hours in any one calendar week…"  CSR 6.115.

92.    The CSC effectuated these mandates by promulgating an Interim Regulation relating to "Emergency overtime pay for ranking officers in the police and fire departments" that entitles PPD ranking officers, when "authorized to work… during a period of emergency nature, in excess of the number of hours of their regularly scheduled work day or… non-scheduled work day" to be paid "for all hours of such overtime work."  CSR 31.06

93.    PPD ranking officers accepted these promises in the Home Rule Charter and CSR by completing the authorized emergency work assigned to them, giving rise to an enforceable implied contract that required Defendants to ensure PPD ranking officers were paid for the authorized emergency work they performed.

94.    PPD ranking officers had an objectively reasonable expectation of payment for their authorized emergency work by virtue of an implied contract arising from Defendants actions that included: assigning and scheduling PPD ranking officers' emergency work, requiring PPD ranking officers to perform emergency work, authorizing PPD ranking officers to perform emergency work, and causing PPD ranking officers to track all the time they spent performing authorized emergency work.

95.    PPD ranking officers had an objectively reasonable expectation of payment for their authorized emergency work by virtue of an implied contract arising from events and circumstances that included: the ordinary expectations of their workplace, the fact they were paid overtime wages for their authorized emergency work on certain days (Mummers' Parade, Fourth of July, etc…), the social utility of their performance of authorized emergency work, the clear public interest served by their performance of authorized emergency work, and the measurable value of their time

spent on authorized emergency work.

96.    PPD ranking officers further demonstrated their objectively reasonable expectation of payment for their authorized emergency work by repeatedly inquiring about their entitlement to compensation for this work, and requesting payment for this work beginning around September 2023.

97.    PPD ranking officers' expectation of payment for their authorized emergency work and the existence of an implied contract requiring PPD ranking officers to be paid for this work are not obviated by Defendants' failure to provide wages for this work, or any statements Defendants made to the effect this work was not compensable, because a unilateral, implied contract can still support an entitlement to wages even where workers are told wages will not be paid. *See Dean v. CVS Pharmacy, Inc.,* 2017 WL 3891958, *4-5 (E.D. Pa. Sept. 9, 2017), *citing Braun v. Wal-Mart Stores, Inc.,* 24 A.3d 875 (Pa. Super. Ct. 2011), *aff'd,* 630 Pa. 292, 106 A.3d 656 (Pa. 2014).

98.    Instead of fulfilling their contractual obligation to provide PPD ranking officers with all wages owed for their authorized emergency work, Defendants breached their obligation to effectuate this requirement by failing to properly pay any PPD ranking officer any wages for their authorized emergency work at any point since September 23, 2013.

99.    Defendants have no good faith justification or defense for failing to implement or effectuate CSR 31.06 for the benefit of PPD ranking officers, or for denying them the required additional compensation this Regulation requires.

100.    By failing to pay PPD ranking officers promised wages due on regular paydays designated in advance, Defendants violated WPCL § 3.

101.    By failing to notify PPD ranking officers about their entitlement to additional wages for the authorized emergency work they performed, or about the time and place for payment of their overtime hours, Defendants violated WPCL § 4.

102.    By failing to notify PPD ranking officers that they did not intend to pay required wages for their authorized emergency work, Defendants violated WPCL § 4.

103.    WPCL §§ 9.1 and 10 permit Plaintiffs to institute an action on behalf of a group of employees to recover any unpaid wages, liquidated damages, attorneys' fees, litigation costs, and pre-judgment interest.

WHEREFORE, Plaintiffs respectfully pray for an Order:

a.      Certifying this matter to proceed as a class action;

b.      Approving Plaintiffs as an adequate Class representatives;

c.      Appointing Stephan Zouras LLC and Weir Greenblatt Pierce LLP as Class Counsel;

d.      Finding that Defendants deprived Plaintiffs and the Class members of a legally-protected property interest without due process in violation of the Fourteenth Amendment and 42 U.S.C.A. § 1983;

e.      Finding that Defendants willffully violated the WPCL by failing to pay required additional wages due to Plaintiffs and the Class members;

f.      Granting judgment in favor of Plaintiff and the Class members against Defendants on Counts I and II;

g.      Awarding all available compensatory damages in amounts to be determined;

h.      Awarding all available liquidated damages in amounts to be determined;
i.      Awarding pre-judgment interest on all compensatory damages due;

j.      Awarding a reasonable attorney's fee and reimbursement of all costs and expenses incurred in litigating this action;

k.      Awarding equitable and injunctive relief precluding the continuation of the policies and practices pled in this Complaint;

l.      Awarding any further relief the Court deems just, necessary, and proper; and

m.      Maintaining jurisdiction over this action to effectuate any settlement or resolution of Plaintiffs' claims and ensure Defendants' compliance with the foregoing mandates.


Respectfully submitted,

Dated: January 24, 2025          */s/ David J. Cohen*
                                 David J. Cohen
                                 **STEPHAN ZOURAS LLC**
                                 604 Spruce Street
                                 Philadelphia, PA 19106
                                 215-873-4836
                                 *dcohen@stephanzouras.com*

                                 James B. Zouras (*pro hac vice*)
                                 **STEPHAN ZOURAS LLC**
                                 222 W. Adams Street, Suite 2020
                                 Chicago, IL  60606
                                 312-233-1550
                                 *jzouras@stephanzouras.com*

                                 Ronald L. Greenblatt
                                 Patricia V. Pierce
                                 **GREENBLATT PIERCE**
                                 1500 John F. Kennedy Boulevard, Suite 1230
                                 Philadelphia, PA  19102
                                 (215) 278-6865
                                 *rgreenblatt@ggplawfirm.com*
                                 *ppierce@ggplawfirm.com*

                                 *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he caused a copy of the foregoing pleading to be served today upon all registered counsel by electronically filing said document with the Clerk of the U.S. District Court of the Eastern District of Pennsylvania.

Dated: January 24, 2025          */s/ David J. Cohen*