## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CHRISTOPHER FLACCO and WINTON SINGLETARY,**<br>**Plaintiffs,**<br>**v.**<br><br>**DANIELLE OUTLAW, CHARLES RAMSEY, RICHARD ROSS, JR., JOHN STANFORD, JR., KEVIN BETHEL, MICHAEL ZACCAGNI, PEDRO RODRIGUEZ, ALBERT D'ATTILIO, and CANDI JONES, in their individual capacities, and THE CITY OF PHILADELPHIA,**<br>**Defendants.** | **Case No. 24-cv-4374-MAK**<br><br><br>**JURY TRIAL DEMANDED** |

## THIRD AMENDED CLASS ACTION COMPLAINT

Christopher Flacco and Winton Singletary ("Plaintiffs") hereby allege as follows against Danielle Outlaw, Charles Ramsey, Richard Ross, Jr., John Stanford, Jr., Kevin Bethel, Michael Zaccagni, Pedro Rodriguez, Albert D'Attilio, and Candi Jones, in their individual capacities ("Individual Defendants"), and the City of Philadelphia ("the City") (together, "Defendants") based upon actual knowledge, information, belief, and the investigation of their counsel:

## NATURE OF THE ACTION

1.      Plaintiffs contend the nine Individual Defendants, acting together, in their individual capacities and as joint employers: 1) violated the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S. §§ 260.1, *et seq.* ("WPCL"), by failing to provide Philadelphia Police Department Captains, Staff Inspectors, Inspectors, and Chief Inspectors ("PPD ranking officers") wages owed by agreement for emergency work performed beyond their regularly-scheduled hours; and 2) failed to provide required Fourteenth Amendment procedural due process protections before

denying these wages.  Plaintiffs seek all available damages from the Individual Defendants on both claims.

2.      Plaintiffs contend the City, a municipal corporation acting as their joint employer, violated the WPCL by failing to provide PPD ranking officers with wages owed by agreement for emergency work they performed beyond their regularly-scheduled hours.  Plaintiffs seek all available damages from the City on their WPCL claim.[1]

## JURISDICTION AND VENUE

3.      This Court has original, federal question jurisdiction over this action pursuant to 28 U.S.C. §1331, because Plaintiffs allege the Individual Defendants violated their constitutional right to procedural due process, and have pled a claim under a federal statute, 42 U.S.C.A. § 1983.  This Court has supplemental jurisdiction over Plaintiffs' WPCL claim pursuant to 28 U.S.C. § 1367 as this claim is related to, and forms part of the same case or controversy as, Plaintiffs' procedural due process claim.

4.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), because many actions and omissions giving rise to Plaintiffs' claims occurred in this District; Plaintiffs reside in this District, suffered the losses at issue in this District, and worked for Defendants in this District; the Individual Defendants all worked in this District and engaged in the wrongful conduct at issue in this District; and the City is incorporated and has its principal place of business in this District.

---

[1] Plaintiffs file this revised TAC (adding Candi Jones as a Defendant and adding the City as a Defendant "for all purposes" relating to their WPCL claim) with the Court's leave.  *See* May 13, 2025 Order [Doc. 52].  Changes from Plaintiffs' SAC are shown in redline format in Exhibit C. Changes from Plaintiffs' last-filed TAC are shown in redline format in Exhibit D.

## PARTIES

5.      Plaintiff Christopher Flacco is an adult person who lives and works in Philadelphia County (PA).  At all relevant times, Plaintiff Flacco has been employed as a PPD ranking officer.

6.      Plaintiff Winton Singletary is an adult person who lives and works in Philadelphia County (PA).   At all relevant times, Plaintiff Singletary has been employed as a PPD ranking officer.

7.      Defendant Charles Ramsey is an adult person who lives and works in Philadelphia County (PA).  Defendant Ramsey served as PPD Commissioner from January 2008 to January 2016.

8.      Defendant Richard Ross, Jr. is an adult person who lives and works in Philadelphia County (PA).  Defendant Ross served as PPD Commissioner from January 2016 to August 2019.

9.      Defendant John Stanford, Jr. is an adult person who lives and works in Philadelphia County (PA).  Defendant Stanford served as Acting PPD Commissioner from August 2019 to December 2019.

10.     Defendant Danielle Outlaw is an adult person who lives in Montclair County (NJ) and works in Manhattan County (NY).  Defendant Outlaw served as PPD Commissioner from December 2019 to September 2023.

11.     Defendant Kevin Bethel is an adult person who lives in Montgomery County (PA) and works in Philadelphia County (PA).  Defendant Bethel has served as PPD Commissioner since November 2023.

12.     Defendant Albert D'Attilio is an adult person who lives and works in Philadelphia County (PA).  Defendant D'Attilio served as Philadelphia Office of Human Resources ("OHR") Director from before September 2013 to March 2016.

13.     Defendant Pedro Rodriguez is an adult person who lives and works in Philadelphia County (PA).  Defendant Rodriguez served as OHR Director from May 2016 to early 2019.

14.     Defendant Michael Zaccagni is an adult person who lives and works in Philadelphia County (PA).  Defendant Zaccagni served as OHR Director from June 2019 to December 2024.

15.     Defendant Candi Jones is an adult person who lives and works in Philadelphia County (PA).  Defendant Jones has served as OHR Director since December 2024.

16.     Defendant City of Philadelphia is a municipal corporation, *see* 53 P.S. §§ 16252 and 16255, based in Philadelphia County (PA) that operates under the Philadelphia Home Rule Charter created by the Pennsylvania General Assembly ("Home Rule Charter").

## EMPLOYMENT STATUS ALLEGATIONS

17.     Throughout the relevant period, the Individual Defendants and the City have jointly employed PPD ranking officers because they, individually and collectively: had authority to hire and fire PPD ranking officers; managed and oversaw the employment application process for PPD ranking officers; determined if PPD employees would be promoted to PPD ranking officers, retained in this position, transferred, promoted to a higher rank, or terminated.

18.     Throughout the relevant period, the Individual Defendants and the City have jointly employed all PPD ranking officers because they, individually and collectively: had authority to promulgate work rules and assignments and set conditions of employment for PPD ranking officers, including policies, procedures, and regulations relating to their work, time, and pay; had authority to determine how these rules and conditions were applied and enforced; designed and provided job-related training concerning these rules and conditions; set PPD ranking officers' work schedules; assigned PPD ranking officers' work and indicated how it would be performed; determined timekeeping methods and systems PPD ranking officers used; tracked PPD ranking

officers' work hours; set and managed the payroll policies and systems applicable to PPD ranking officers; processed PPD ranking officers' time records and approved their work time for payment; and were responsible to ensure PPD ranking officers were properly paid for all hours worked.

19.     Throughout the relevant period, the Individual Defendants and the City have jointly employed all PPD ranking officers because they, individually and collectively: were responsible for their "day-to-day" supervision; directed and controlled all aspects of their work; reviewed and evaluated their job performance, and determined the scope and nature of any discipline or suspensions imposed on them.

20.     Throughout the relevant period, the Individual Defendants and the City have jointly employed all PPD ranking officers because they, individually and collectively, controlled all records relating to PPD ranking officers' employment, including hiring, human resources, work, time, compensation, insurance, and tax records.

21.     Throughout the relevant period, the Individual Defendants and the City have been ultimately, directly, and jointly responsible for violating the WPCL by failing to provide PPD ranking officers with wages owed by agreement for emergency work they performed beyond their regularly-scheduled hours.

## **BACKGROUND FACTS**

22.     In 1949, the Commonwealth of Pennsylvania General Assembly approved the Home Rule Charter, granting the City and its officers extensive administrative, executive, and legislative powers, including the ability to "enact ordinances and to make rules and regulations necessary and proper for carrying into execution its powers."  Home Rule Charter §1-100.

23.     The Home Rule Charter created the position of Personnel Director and, among other things, made this person responsible for preparing regulations "pertaining to the position

classification plan, pay plan, hours of work, holidays and annual vacation and sick leave" for review and approval by a Civil Service Commission. *Id.* at § 7-400.

24.     The Home Rule Charter also created a Civil Service Commission ("CSC") to investigate personnel administration issues for employees in City service, advise the Mayor and Personnel Director on those issues, approve CSR and amendments thereto, and promote the improvement of City personnel administration, among other things. *Id.* at § 7-200.

25.     The Home Rule Charter mandated the drafting of CSR, including "a position classification plan for all positions in the civil service" (so the same qualifications could be required for, and the same pay schedule could be applied to, all positions in the same class) and "a pay plan for all employees in the civil service" (identifying the rates paid to each employee). *Id.* at § 7-401.

26.     Historically, the Collective Bargaining Agreement between the City and Fraternal Order of Police Lodge No. 5 ("CBA"), did not make PPD ranking officers eligible for overtime pay for all hours over 40 per week and, instead, only made them eligible to earn extra straight-time pay for extra hours worked on seven event-specific days each year (*e.g.,* the Mummers' parade and the Fourth of July celebration).  CBA, p.60.

27.     Entirely independent of the CBA, the CSC enacted CSR 6.11 and CSR 31 to provide certain City employees with an entitlement to overtime wages.  CSR 6.115-7; CSR 31.03-31.27.

28.      On September 23, 2013, the CSC enacted additional Regulations that expanded the classes of employees eligible for overtime wages and the types of work that qualified for overtime. CSR 31.02-31.99; Nov. 13, 2013 Memo (Exhibit A).

29.    The September 23, 2013 Regulations included CSR 31.06 ("Emergency overtime pay for ranking officers in the police and fire departments") that expressly mandated PPD ranking officers would be "paid at their then-regular rate of pay" for all hours they were "authorized to work… during a period of emergency nature" "in excess of the number of hours of their regularly scheduled work day or, for all hours worked on a nonscheduled work day." Nov. 13, 2013 Memo, p. 3 (describing CSR 31.06) (Exhibit A).

30.    On November 13, 2013, Individual Defendant D'Attilio sent a Memorandum notifying "All Offices, Boards and Commissions" about the September 23, 2013 "Amendments to the Civil Service Regulations," including CSR 31.06. *Id.* Importantly, Individual Defendant D'Attilio did not send his Memorandum to any PPD ranking officer, or instruct any recipient to share it with any PPD ranking officer. Nor did Individual Defendant D'Attilio send his Memorandum to any union official representing PPD ranking officers, or instruct any recipient to share it with any such person. *Id.*

31.    Since September 23, 2013, pursuant to the Home Rule Charter, CSC Regulations, Individual Defendant D'Attilio's Memorandum, and multiple PPD policies and practices, the Individual Defendants shared responsibility for: implementing CSR 31.06 with respect to PPD ranking officers; notifying PPD ranking officers of their entitlement to be paid additional wages for emergency work beyond their regularly-scheduled hours; ensuring PPD ranking officers' emergency work beyond their regularly-scheduled hours was properly assigned, authorized, tracked, and paid; and guaranteeing PPD ranking officers due process before depriving them of property rights provided under the CSR. *Id. See, e.g.,* Home Rule Charter, §§ 7-100, 7-400, and 7-401; CSR 1.01 ("It is the purpose of these Regulations to implement the Charter provisions… contained in policies and procedures covering… personnel administration").

32.     Despite knowing about the Regulations discussed above, knowing about the wage and hour policies, systems, and Regulations that relate to Plaintiff's claims, and directly controlling all aspects of PPD ranking officers' work, time, and compensation, the Individual Defendants acted outside the scope of their employment and duties, ignoring applicable policies, Regulations, and systems, to subvert the requirement in CSR 31.06 that PPD ranking officers be paid for all emergency work they performed beyond their regularly-scheduled hours.   The Individual Defendants accomplished this goal by, among other things, failing to notify any PPD ranking officer of their entitlement to be paid additional wages for emergency work beyond their regularly-scheduled hours; failing to comply with the mandatory wage payment requirement in CSR 31.06, failing to ensure that all work eligible work PPD ranking officers performed under CSR 31.06 was properly paid; and failing to provide any PPD ranking officer with due process before depriving them of wages CSR 31.06 requires.

33.     Despite knowing that the applicable provisions of the Home Rule Charter and CSR constituted an implied agreement or promise to pay PPD ranking officers overtime wages for all the emergency work they performed beyond their regularly-scheduled hours, that PPD ranking officers accepted this agreement or promise by routinely performing emergency work beyond their regularly-scheduled hours and tracking and submitting the time they spent on this work, and that the Individual Defendants and the City derived significant benefits from PPD ranking officers' performance of this work, the Individual Defendants and the City violated the WPCL by failing to pay PPD ranking officers the wages CSR 31.06 requires since September 23, 2013.

34.     By successfully ignoring and subverting their duties in all the ways described herein, the Individual Defendants and the City were able to cause almost a decade to pass without

any PPD ranking officer learning of their entitlement to be paid for emergency work beyond their regularly-scheduled hours.

35.     Since September 2013, the Individual Defendants and the City have prepared, approved, and issued scores of Operations Orders requiring PPD ranking officers to perform emergency work beyond their regularly-scheduled hours for specific events, and describing this work.  Although the Individual Defendants and the City have known that their Operations Orders require PPD ranking officers to perform emergency work beyond their regularly-scheduled hours and that CSR 31.06 requires PPD ranking officers to be paid for this work, the Individual Defendants and the City did not cause any wages to be paid for this work, and the Individual Defendants did not provide PPD ranking officers with any procedural due process before denying or withholding these wages.

36.     Since September 2013, the Individual Defendants have been responsible for enforcing the PPD Standard Operating Procedures ("SOPs"), including SOPs requiring PPD ranking officers to perform emergency work beyond their regularly-scheduled hours, and describing this work.  Although the Individual Defendants and the City have known that certain SOPs require PPD ranking officers to perform emergency work beyond their regularly-scheduled hours, and that CSR 31.06 requires PPD ranking officers to be paid for this work, the Individual Defendants and the City did not cause any wages to be paid for this work, and the Individual Defendants did not provide PPD ranking officers with any procedural due process before denying or withholding wages owed for this work.

37.     Since September 2013, the Individual Defendants and the City have maintained timekeeping policies and procedures requiring PPD ranking officers to attribute most emergency work beyond their regularly-scheduled hours to "Overtime Code 31," designated for

"administrative" work.  Although the Individual Defendants and the City have access to PPD ranking officers' time records, regularly review all "Overtime Code 31" time entries, and know that CSR 31.06 requires PPD ranking officers to be paid for work entered under this Code, the Individual Defendants and the City did not cause any wages to be paid for this work, and the Individual Defendants did not provide PPD ranking officers with any procedural due process before denying or withholding these wages.

38.     At the end of every year since 2013, the Individual Defendants have prepared, approved, and issued an annual "Weekend Command Schedule" requiring PPD ranking officers to perform emergency work beyond their regularly-scheduled hours for specific events scheduled the following year and describing this work.  Although the Individual Defendants and the City have known that Weekend Command Schedules require PPD ranking officers to emergency work beyond their regularly-scheduled hours and that CSR 31.06 requires PPD ranking officers to be paid for this work, the Individual Defendants and the City did not cause any wages to be paid for this work, and the Individual Defendants did not provide PPD ranking officers with any procedural due process before denying or withholding these wages.

39.     From 2013 to 2019, the PPD Commissioner and the PPD Commander Association President met regularly to discuss issues effecting PPD ranking officers.  During these meetings, the PPD Commander Association President routinely questioned Individual Defendants Ramsey and Ross about failing to pay PPD ranking officers for emergency work beyond their regularly-scheduled hours.  Individual Defendants Ramsey and Ross routinely ignored or laughed-off these questions, did not cause any wages to be paid for this work, and did not provide PPD ranking officers with any procedural due process before denying or withholding these wages.

40.     During scores of Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings conducted between 2013 and 2023, PPD ranking officers asked the Individual Defendants about being paid for emergency work beyond their regularly-scheduled hours.  The Individual Defendants routinely ignored or laughed-off these questions, did not cause any wages to be paid for this work, and did not provide PPD ranking officers with any procedural due process before denying or withholding these wages.

41.     During Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings in June 2020 relating to weeks of George Floyd protests, many PPD ranking officers asked Individual Defendant Outlaw about being paid for emergency work beyond their regularly-scheduled hours.  Individual Defendant Outlaw uniformly ignored or laughed-off these questions, did not cause any wages to be paid for this work, and did not provide PPD ranking officers with any procedural due process before denying or withholding these wages.

42.     During Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings in October 2020 relating to the shooting death of Walter Wallace, several PPD ranking officers asked Individual Defendant Outlaw about being paid for emergency work beyond their regularly-scheduled hours.  Individual Defendant Outlaw uniformly ignored or laughed-off these questions, did not cause any wages to be paid for this work, and did not provide PPD ranking officers with any procedural due process before denying or withholding these wages.

43.     During Command Briefings, Command Incident Briefings, and Command Post-Incident Debriefings in June 2022 following the Supreme Court's decision to overturn *Roe v. Wade*, many PPD ranking officers asked Individual Defendant Outlaw about being paid for emergency work beyond their regularly-scheduled hours.  Individual Defendant Outlaw uniformly ignored or laughed-off these questions, did not cause any wages to be paid for this work, and did

not provide PPD ranking officers with any procedural due process before denying or withholding these wages.

44.     In February 2023, PPD ranking officers Robert Heinzeroth ("Heinzeroth") and Steven Clark ("Clark") learned about CSR 31.06 after conducting research to inform their ongoing complaints about unpaid work.  To find out if this Regulation was in effect, or had ever been applied as written, Heinzeroth and Clark approached ranking officers they knew in the Philadelphia Fire Department ("PFD") and learned that PFD ranking officers had received wages mandated by CSR 31.06 for years.

45.     In September 2023, after receiving Operations Orders requiring emergency work beyond their regularly-scheduled hours relating to a city-wide looting event coordinated by a social media influencer, PPD ranking officer Michael McCarrick ("McCarrick") sent the text of CSR 31.06 to Individual Defendant Stanford with a request to pay PPD ranking officers for this work. Individual Defendant Stanford ignored this request, did not cause any wages to be paid for this work, and did not provide McCarrick (or any other PPD ranking officer) with any procedural due process before denying or withholding these wages.

46.     In October 2023, PPD ranking officer Krista Dahl-Campbell ("Dahl-Campbell") asked PPD ranking officer Robert Casselli ("Casselli"), a representative to the City's Labor Relations Unit, if CSR 31.06 entitled PPD ranking officers to be paid for work beyond their regularly-scheduled hours.  Casselli confirmed that CSR 31.06 requires PPD ranking officers to be paid for emergency work beyond their regularly-scheduled hours.

47.     On May 15, 2024, based on information Heinzeroth and Clark learned in February 2023, the PPD Commander Association wrote to the City (through its counsel, the City Solicitor), Individual Defendants Bethel and Zaccagni, and others, demanding they implement CSR 31.06

for PPD ranking officers as they had for PFD ranking officers, and pay PPD ranking officers for all work performed beyond their regularly-scheduled hours since September 23, 2013.  May 15, 2024 Letter (Exhibit B).

48.    Since September 2023, Heinzeroth, Clark, McCarrick, Dahl-Campbell, and many other PPD ranking officers have inquired about their entitlement to be paid for emergency work beyond their regularly-scheduled hours under CSR 31.06.  Throughout this time, the Individual Defendants and the City have steadfastly refused to implement CSR 31.06 with respect to any PPD ranking officer, refused to notify any PPD ranking officer of their entitlement to wages under CSR 31.06, and refused to pay any PPD ranking officer for emergency work beyond their regularly-scheduled hours under CSR 31.06.  The Individual Defendants have also failed to provide any PPD ranking officer with procedural due process before withholding these wages.

## PLAINTIFF-SPECIFIC ALLEGATIONS

49.    At all relevant times, Plaintiffs Flacco and Singletary have been PPD ranking officers within the meaning of CSR 31.06.

50.    From September 23, 2013 to August 26, 2020, Plaintiff Flacco served as Chief Inspector of the Office of Professional Responsibility.  At the direction of his commanding officer, Plaintiff Flacco spent approximately 3,100 hours beyond his regularly-scheduled hours responding to emergency events (*e.g.*, officer-involved shootings) that qualify for CSR 31.06 overtime pay.  Although Plaintiff Flacco properly tracked and recorded all these hours using designated overtime codes, Defendants did not pay him all wages CSR 31.06 requires for this work, pay him consistent with his expectation this work was compensable, or provide any procedural due process before failing to provide all wages owed for this work.

51.     From August 26, 2020 to present, Plaintiff Flacco has served in an operational capacity as Chief Police Inspector in the Narcotics Division.  At the direction of his commanding officers, Plaintiff Flacco has spent more than 2,000 hours beyond his regularly-scheduled hours responding to emergency events (*e.g.,* riots, election protests, looting events, and anti-Israel protests) that qualify for CSR 31.06 overtime pay.  Although Plaintiff Flacco properly tracked and recorded all these hours using designated overtime codes, Defendants did not pay him all wages CSR 31.06 requires for this work, pay him consistent with his expectation this work was compensable, or provide any procedural due process before failing to provide all wages owed for this work.

52.     From September 23, 2013 to present, Plaintiff Singletary has served in an operational capacity as a S.W.A.T. Captain, Special Operations Inspector, and Patrol Chief Inspector.  At the direction of his commanding officers, Plaintiff Singletary has spent more than 6,900 hours beyond his regularly-scheduled hours responding to emergency events (*e.g.,* officer involved shootings, active shooters, mass shootings, barricades, riots, election protests, looting events, and anti-Israel protests) that qualify for CSR 31.06 overtime pay.  Although Plaintiff Singletary properly tracked and recorded all these hours using designated overtime codes, Defendants did not pay him all wages CSR 31.06 requires for this work, pay him consistent with his expectation this work was compensable, or provide any procedural due process before failing to provide all wages owed for this work.

## CLASS ACTION ALLEGATIONS

53.     Plaintiffs bring their claims as a class action pursuant to Fed. R. Civ. P. 23 for a putative Class including: "All PPD Captains, Staff Inspectors, Inspectors, or Chief Inspectors who, since September 23, 2013, have performed emergency work beyond their scheduled hours without

being paid all wages owed for this work." Plaintiffs exclude Defendants from this definition and reserve the right to further revise this definition as needed.

54. Plaintiffs belong to the Class, because they worked in the identified positions during the relevant period and performed emergency work beyond their scheduled hours without being paid all wages owed for this work.

55. Class treatment of Plaintiffs' claims is appropriate because the putative Class satisfies the requirements of Fed. R. Civ. P. 23.

56. The Class members are so numerous that joinder of all their individual claims would be impracticable. The City has produced a list of "Commanders 2013 to present" (City 8880-8889) showing 224 people said to meet the Class definition.

57. Plaintiffs' claims are typical of the claims belonging to the Class members. Plaintiffs and the Class members are all similarly-situated employees who performed similar job duties, were subject to the same policies and procedures, and suffered the same type of harm because of Defendants' common course of wrongful conduct.

58. There are material questions of law or fact common to the Class members because, as discussed throughout this filing, the Individual Defendants and the City engaged in a common course of conduct that violated the Class members' legal rights. The legality of all Defendants' actions will be demonstrated by applying generally applicable legal principles to common evidence. Any individual questions Plaintiffs' claims present will be far less central to this litigation than the numerous common questions of law and fact, including:

> a. Whether Defendants imposed materially-identical scheduling, work, timekeeping, and compensation policies on Plaintiffs and the Class members;
>
> b. Whether Plaintiffs and the Class members performed emergency work beyond their scheduled hours;

c.      Whether CSR 31.06 provides Plaintiffs and the Class members with an entitlement to wages for performing emergency work beyond their scheduled hours;

d.      Whether any provisions in the CBA or Act 111 obviate, or take precedence over, the wage mandate in CSR 31.06;

e.      Whether, or when, the Class members learned about their entitlement to receive wages for performing emergency work beyond their scheduled hours under CSR 31.06;

f.      Whether the discovery rule, or any Defendant's fraudulent concealment, has tolled the statute(s) of limitations applicable to Plaintiffs' claims;

g.      Whether the Individual Defendants failed to provide required Fourteenth Amendment procedural due process protections before denying wages due under CSR 31.06;

h.      Whether the Individual Defendants or the City violated the WPCL by failing to pay wages owed by agreement for emergency work performed beyond PPD ranking officers' regularly-scheduled hours; and

i.      Whether Plaintiffs and the Class members are entitled to recover damages or other relief on the claims pled this Complaint.

59.    Plaintiffs will fairly and adequately protect the interests of the putative Class members and have retained competent and experienced counsel for this purpose.

60.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual Class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation for at least the following reasons:

a.      absent a class action, the putative Class members will be essentially unable to redress the conduct pled here, all Defendants' violations of law will continue without remedy and the putative Class members will continue to be harmed;

b.    a class action will permit an orderly and expeditious administration of class claims, foster economies of time, effort, and expense;

c.    this lawsuit presents no particularly unusual or difficult issues that would impede its management as a class action; and

d.    All Defendants have acted on grounds generally applicable to the putative Class members, making class-wide management appropriate.

61.    Allowing Plaintiffs' claims to proceed as a class action will be superior to requiring the individual adjudication of each Class member's claim, since requiring approximately 224 hourly-paid employees to file and litigate individual wage claims would place an undue burden on all Defendants, the Class members, and this Court.  Class action treatment will allow many similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense that would be incurred if these claims were brought individually.  Moreover, as the damages each Class member has suffered are relatively small, the expenses and burdens associated with individual litigation would make it difficult for them to bring individual claims.  Further, the presentation of separate actions by individual Class members could create a risk for inconsistent and varying adjudications, establish incompatible standards of conduct for all Defendants, substantially impairing the Class members;' ability to protect their interests.

62.    Allowing Plaintiffs' claims to proceed as a class action is also appropriate, because the WPCL expressly permits private class action lawsuits to recover unpaid wages.

## EQUITABLE TOLLING BASED ON THE DISCOVERY RULE
## AND DEFENDANTS' FRAUDULENT CONCEALMENT

63.    From at least September 2013 to February 2023, the Individual Defendants and the City had a duty to inform PPD ranking officers of their rights and entitlements under the CSR,

effectuate the rights CSR 31.06 grants to all PPD ranking officers, pay all wages CSR 31.06 mandates for emergency work PPD ranking officers performed beyond their regularly-scheduled hours, or provide PPD ranking officers with due process before refusing to pay these wages.

64.     Since September 2013, the Individual Defendants and the City have violated all these duties by engaging in a concerted effort to subvert the requirement that PPD ranking officers be paid for emergency work beyond their regularly-scheduled hours through acts that include: failing to implement CSR 31.06 with respect to any PPD ranking officer; failing to notify any PPD ranking officer about the existence of CSR 31.06; failing to notify any PPD ranking officer of their right to be paid for emergency work beyond their regularly-scheduled hours; routinely laughing-off, or refusing to answer, PPD ranking officers' questions about being paid for emergency work beyond their regularly-scheduled hours; saying PPD ranking officers were not entitled to wages for emergency work beyond their regularly-scheduled hours; denying PPD ranking officers' requests to be paid for emergency work beyond their regularly-scheduled hours; failing to approve or pay wages to PPD ranking officers for emergency work beyond their regularly-scheduled hours under CSR 31.06 or otherwise; and failing to provide any PPD ranking officer with due process before depriving them of wages mandated by CSR 31.06.

65.     From at least September 2013 to February 2023, PPD ranking officers exercised reasonable diligence to discover their entitlement to wages for emergency work beyond their regularly-scheduled hours by engaging in activities that included: attending meetings about time and pay issues and rights; communicating with their union representatives about time and pay issues and rights; communicating with the City's Labor Relations Unit about time and pay issues and rights; investigating their entitlement to wages for emergency work beyond their regularly-scheduled hours; and repeatedly requesting wages for emergency work beyond their regularly-

scheduled hours without these inquires being meaningfully or productively answered, or any such wages being provided.

66.     None of these efforts led PPD ranking officers to gain actual or constructive knowledge that they were owed wages under CSR 31.06 any point before February 2023 because the Individual Defendants and the City consistently failed to publicize or share information about CSR 31.06 to PPD ranking officers and otherwise denied, laughed-off, and rejected all efforts by PPD ranking officers to seek overtime wages for emergency work beyond their regularly-scheduled hours.

67.     PPD ranking officers are entitled to equitable tolling under the discovery rule because they did not learn about the wage entitlement in CSR 31.06 despite reasonable efforts, and the Individual Defendants and the City are estopped from relying on any statute of limitations defense because they engaged in a concerted, long-term, successful effort to fraudulently conceal this information from PPD ranking officers.

## COUNT I
**Violation of Fourteenth Amendment Procedural Due Process Under 42 U.S.C.A. § 1983**
**(Against the Individual Defendants for All Available Damages)**

68.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

69.     The Due Process Clause of the Fourteenth Amendment has a procedural component that protects individuals against governmental deprivations of life, liberty, or property without due process of law.  U.S. Const. Amend. XIV, § 1.

70.     A procedural due process claim under 42 U.S.C.A. § 1983 has three elements: (1) a liberty or property interest protected by state law; (2) a deprivation of the interest by the government; and (3) a lack of due process.

71.     The Eleventh Amendment immunizes state and municipal entities from many federal claims brought by citizens, but this immunity does not extend to claims for prospective, injunctive, or declaratory relief seeking to end a continuing violation of federal law.  *Chee-Wah v. Maurer*, 663 F. App'x 194, 198 (3d Cir. 2016); *Leppien v. Harry*, 2025 WL 539955, *8 (M.D. Pa. Feb. 18, 2025).

72.     At all times relevant to Plaintiffs' claims, the CSR prepared by the Personnel Director, approved by the CSC, and effectuated under the Home Rule Charter have governed the terms of public employment in the City.

73.     Since September 23, 2013, the CSR has mandated that PPD ranking officers "authorized to work by their respective Commissioners during a period of emergency nature, in excess of the number of hours of their regularly scheduled work day or, for all hours worked on a nonscheduled work day shall, for all hours of such overtime work, be paid at their then-regular rate of pay."  Nov. 13, 2013 Memo, p. 3 (CSR 31.06) (Exhibit A).

74.     Since September 23, 2013, PPD ranking officers have had a reasonable expectation the emergency work they performed beyond their regularly-scheduled hours should and would be compensated by virtue of circumstances that included: CSR 31.06 expressly mandating payment of these wages; PFD ranking officers receiving payment for this same type of work under the same circumstances; federal and state laws requiring wages to be paid for all hours worked; this work providing significant benefits to the City, its residents, visitors, and other PPD employees; the ordinary expectations of their workplace informed by the fact overtime wages have historically been paid for emergency work beyond their regularly-scheduled hours on certain days (*e.g.,* the Mummers' parade and Fourth of July celebration); and the fact emergency work they performed beyond their regularly-scheduled hours has a specific, measurable value.

75.    The Individual Defendants acted under color of law in failing to implement CSR 31.06 with respect to PPD ranking officers and denying wages to PPD ranking officers for emergency work beyond their regularly-scheduled hours since September 23, 2013 – meaning the Individual Defendants depended upon the cloak of their authority as a municipal corporation and municipal employees in committing the alleged acts, and this authority enabled Defendants to commit these actions.

76.    The Individual Defendants' actions and failures to act deprived PPD ranking officers of wages owed under CSR 31.06 for emergency work beyond their regularly-scheduled hours and in which they had a protected property interest.

77.    Rather than paying wages to PPD ranking officers for the emergency work they performed beyond their regularly-scheduled hours, the Individual Defendants retained this money to allocate or spend as they chose – serving their own interests, preferences, priorities, or other needs they perceived the PPD to have – instead of complying with the wage payment mandate in CSR 31.06.

78.    The Individual Defendants directly and jointly deprived PPD ranking officers of wages mandated by CSR 31.06 without first providing them any notice, much less adequate notice.

79.    The Individual Defendants directly and jointly deprived PPD ranking officers of wages mandated by CSR 31.06 without first providing them any opportunity to be heard, much less an adequate opportunity to be heard.

80.    The Individual Defendants directly and jointly deprived PPD ranking officers of wages mandated by CSR 31.06 without first providing them a formal decision justifying their action or failure to act.

81.     The Individual Defendants directly and jointly deprived PPD ranking officers of wages mandated by CSR 31.06 without first allowing them an opportunity to appeal their action or failure to act.

82.     The Individual Defendants repeatedly ignored or laughed-off PPD ranking officers' questions about wages owed for emergency work beyond their regularly-scheduled hours and no Defendant caused any wages to be paid for PPD ranking officers' emergency work beyond their regularly-scheduled hours despite considerations that included: CSR 31.06 expressly mandating payment of these wages; PFD ranking officers receiving payment for this same type of work under the same circumstances; federal and state laws requiring wages to be paid for all hours worked; this work providing significant benefits to the City, its residents, visitors, and other PPD employees; the ordinary expectations of their workplace informed by the fact overtime wages have historically been paid for emergency work beyond their regularly-scheduled hours on certain days (*e.g.,* the Mummers' parade and Fourth of July celebration); and the fact emergency work they performed beyond their regularly-scheduled hours has a specific, measurable value.

83.     The Individual Defendants' actions have caused PPD ranking officers significant harm by denying them wages in which they had a protected property interest for more than twelve years.

84.     The Individual Defendants are not immune from Plaintiffs' § 1983 claim because they personally acted outside the scope of their official duties – ignoring mandatory provisions of the Home Rule Charter, failing to comply with the express mandate in CSR 31.06 that PPD ranking officers be paid for emergency work they performed beyond their regularly-scheduled hours, and failing to provide  PPD ranking officers with due process before depriving them of a state-created property right – despite being fully aware of the performance of this work, the substantial benefit

this work provided to the PPD, the City, its residents, visitors, and other PPD employees, and the fact that PFD ranking officers were routinely paid for emergency work they performed beyond their regularly-scheduled hours.

85.     Plaintiffs seek all available damages from the Individual Defendants for their personal and collective failure to provide required procedural due process as described above.

## COUNT II
## Violation of the WPCL
## <u>(Against the Individual Defendants and the City for All Available Damages)</u>

86.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

87.     The City is a municipal corporation that qualifies as an "Employer" under WPCL § 2.1. *Paparo v. Borough of Yeadon*, 714 F. Supp. 3d 529, 551 (E.D. Pa. 2024) ("the plain and ordinary meaning of 'corporation' – both now and at the time the WPCL was enacted – is unambiguously broad enough to include municipal corporations"); *Fayad v. City of Philadelphia*, 2023 WL 2955894, *3 (E.D. Pa. Apr. 14, 2023).

88.     The Individual Defendants qualify as "Employers" under WPCL § 2.1. *Paparo*, 714 F. Supp. 3d at 561 ("By statutory definition, 'employer' includes any agent or officer of a corporation"); *Andrews v. CompUSA, Inc*., 2000 WL 623234, *4 (E.D. Pa. May 15, 2000) ("The definition of 'agent or officer' for purposes of the WPCL encompasses individuals who exercised a policy-making function in the company or had an active role in the decision-making process").

89.     PPD ranking officers are "Employees" entitled to the WPCL's protections.

90.     The Home Rule Charter requires the preparation and adoption of CSR pertaining to all City employees, including the creation of a "pay plan for all employees in the civil service." Home Rule Charter §§ 7-400 and 7-401.

91.     The Home Rule Charter provides "all employees… shall be paid at [the correct rate] for the class of position in which [they are] employed," *id.* at § 7-401(b), and that City employees be provided with "Hours of work… [and] attendance regulations," *Id.* at § 7-0401(r).

92.     The CSC effectuated these mandates, in part, by promulgating a Regulation relating to "Special compensatory or overtime pay categories" that entitles specific classes of employees to be "compensated for all hours worked in excess of eight (8) hours in any one calendar day or forty (40) hours in any one calendar week…" CSR 6.115.

93.     The CSC effectuated these mandates, in part, by promulgating a Regulation relating to "Emergency overtime pay for ranking officers in the police and fire departments" that entitles PPD ranking officers, when "authorized to work… during a period of emergency nature, in excess of the number of hours of their regularly scheduled work day or… non-scheduled work day" to be paid "for all hours of such overtime work." Nov. 13, 2013 Memo, p. 3 (CSR 31.06) (Exhibit A).

94.     The wording of CSR 31.06, against the backdrop of the Home Rule Charter, communicates a clear promise that PPD ranking officers who perform emergency work beyond their regularly-scheduled hours will be paid overtime wages for all such work.

95.     PPD ranking officers accepted this promise by continuing in employment with the PPD and performing emergency work beyond their regularly-scheduled hours as required.

96.     PPD ranking officers' acceptance of this promise gave rise to an enforceable implied contract that required the City and the Individual Defendants to ensure that PPD ranking officers were properly paid for all emergency work they performed beyond their regularly-scheduled hours.

97.     PPD ranking officers had an objectively reasonable expectation of being paid for the emergency work they performed beyond their regularly-scheduled hours by virtue of an

implied contract arising from actions by the City and the Individual Defendants that included: promulgating a Regulation that entitles PPD ranking officers to be paid for all emergency work they performed in excess of their regularly-scheduled hours; assigning and scheduling PPD ranking officers to complete emergency work beyond their regularly-scheduled hours; authorizing and requiring PPD ranking officers to perform emergency work beyond their regularly-scheduled hours; and causing PPD ranking officers to track all time they spent on emergency work beyond their regularly-scheduled hours.

98.     PPD ranking officers had an objectively reasonable expectation the emergency work they performed beyond their regularly-scheduled hours would be compensated by virtue of an implied contract arising from circumstances that included: CSR 31.06 expressly mandating payment of these wages; PFD ranking officers receiving payment for the same type of work under the same circumstances; federal and state laws requiring wages to be paid for all hours worked; this work providing significant benefits to the City, its residents, visitors, and other PPD employees; the ordinary expectations of their workplace informed by the fact overtime wages have historically been paid for emergency work beyond their regularly-scheduled hours on certain days (*e.g.,* the Mummers' parade and the Fourth of July celebration); and the fact that the emergency work they performed beyond their regularly-scheduled hours has a specific, measurable value.

99.     PPD ranking officers further demonstrated their objectively reasonable expectation of payment for emergency work beyond their regularly-scheduled hours by repeatedly asking the Individual Defendants about their entitlement to compensation for this work and requesting payment for this work.

100.     PPD ranking officers' expectation of payment for emergency work beyond their regularly-scheduled hours and the existence of an implied contract requiring PPD ranking officers

to be paid for this work are not obviated by their failure to receive wages for this work, or any statement made to the effect this work was not compensable, because a unilateral, implied contract can support an entitlement to wages even when workers are told wages will not be paid. *See Dean v. CVS Pharmacy, Inc.,* 2017 WL 3891958, *4-5 (E.D. Pa. Sept. 9, 2017), *citing Braun v. Wal-Mart Stores, Inc*., 24 A.3d 875 (Pa. Super. Ct. 2011), *aff'd*, 630 Pa. 292, 106 A.3d 656 (Pa. 2014).

101.    Instead of fulfilling their contractual obligation to provide PPD ranking officers with all wages owed for emergency work beyond their regularly-scheduled hours, the City and the Individual Defendants breached their obligation to effectuate this requirement by failing to pay any PPD ranking officer any overtime wages under CSR 31.06 since September 23, 2013.

102.    The City and the Individual Defendants knowingly violated the WPCL because, despite having notice of the overtime pay requirement in CSR 31.06 and being responsible for properly effectuating and applying all CSR relating to PPD ranking officers' work, leveraged their control of PPD scheduling, timekeeping, and compensation policies and systems to assign emergency work to PPD ranking officers beyond their regularly-scheduled hours while failing to provide promised wages for this work.

103.    The City and the Individual Defendants have no good faith justification or defense for failing to implement or effectuate CSR 31.06 for the benefit of PPD ranking officers, or for denying them the additional wages this Regulation promises and requires.

104.    By failing to pay PPD ranking officers promised wages due on regular paydays designated in advance, the City and the Individual Defendants violated WPCL § 3.

105.    By failing to notify PPD ranking officers about their entitlement to additional wages for emergency work beyond their regularly-scheduled hours, or about the time and place for payment of their overtime hours, the City and the Individual Defendants violated WPCL § 4.

106.     By failing to notify PPD ranking officers they did not intend to pay required wages for emergency work beyond their regularly-scheduled hours, the City and the Individual Defendants violated WPCL § 4.

107.     WPCL §§ 9.1 and 10 permit Plaintiffs to institute an action on behalf of a class of employees to recover any unpaid wages, liquidated damages, attorneys' fees, litigation costs, and pre-judgment interest.

108.     Plaintiffs seek all available damages from the City and the Individual Defendants for their violations of the WPCL.

WHEREFORE, Plaintiffs respectfully pray for an Order:

a.     Certifying this matter to proceed as a class action;

b.     Approving Plaintiffs as an adequate Class representatives;

c.     Appointing Stephan Zouras LLC and Goldshaw Greenblatt Pierce as Class Counsel;

d.     Finding that the Individual Defendants deprived Plaintiffs and the Class members of a legally-protected property interest without due process in violation of the Fourteenth Amendment and 42 U.S.C.A. § 1983;

e.     Finding that the City and the Individual Defendants willfully violated the WPCL by failing to pay promised and required wages to Plaintiffs and the Class members;

f.     Granting judgment in favor of Plaintiff and the Class members against the Individual Defendants on Count I and awarding all available damages;

g.     Granting judgment in favor of Plaintiff and the Class members against the City and the Individual Defendants on Count II and awarding all available damages;

h.     Awarding any further relief the Court deems just, necessary, and proper; and

     i.     Maintaining jurisdiction over this action to effectuate any settlement or resolution of Plaintiffs' claims and ensure Defendants' compliance with the foregoing mandates.

                Respectfully submitted,

Dated: May 14, 2025       */s/ David J. Cohen*
                        David J. Cohen
                        **STEPHAN ZOURAS LLC**
                        604 Spruce Street
                        Philadelphia, PA 19106
                        215-873-4836
                        *dcohen@stephanzouras.com*

                        James B. Zouras (*pro hac vice*)
                        **STEPHAN ZOURAS LLC**
                        222 W. Adams Street, Suite 2020
                        Chicago, IL  60606
                        312-233-1550
                        *jzouras@stephanzouras.com*

                        Ronald L. Greenblatt
                        Patricia V. Pierce
                        **GOLDSHAW GREENBLATT PIERCE**
                        1500 John F. Kennedy Boulevard, Suite 1230
                        Philadelphia, PA  19102
                        (215) 278-6865
                        *rgreenblatt@ggplawfirm.com*
                        *ppierce@ggplawfirm.com*

                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a copy of the foregoing pleading to be served today upon all registered counsel by electronically filing said document with the Clerk of the U.S. District Court of the Eastern District of Pennsylvania.

Dated: May 14, 2025       */s/ David J. Cohen*